## Citizens Trust & Guaranty Company, et al. v. Hays, et al.

(Decided December 17, 1915.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1.  Municipal Corporations—Bonds—Negotiable Instruments.—Municipal improvement bonds issued by a city of the second class in accordance with the terms of sections 3101 and 3102 of the Kentucky Statutes, and which bonds are made payable to bearer, and the title to which passes by delivery, are negotiable instruments and free from any defenses or prior equities in the hands

of bona fide innocent holders for value, and they are such character of instruments, notwithstanding the municipality issuing them does not agree to pay them absolutely, but to enforce a lien against the property abutting on the street for the improvement of which the bonds were issued. This is so, although they might have been negotiable under the Negotiable Instruments Act (which is not decided), because the sections of the statute, which was enacted six years after the enactment of the Negotiable Instruments Act, make them negotiable, and said sections would thereby pro tanto any forbidding cause as to the particular character of bonds because of its subsequent enactment.

2.  Bonds—Negotiable Instruments—Holder for Value.—A holder for value before the maturity of a negotiable instrument is a bona fide holder subject to all of the protection given such, when he purchases from a bona fide holder for value, although the former may himself have had notice of prior equities or deficiencies in the paper.

3.  Banks and Banking—Loan of Money in This State by Bank in Another State—Section 571, Kentucky Statutes.—An incorporated bank in another State may lend money in this Commonwealth when the contract under which the loan is made is completed by acceptance at its place of business in the foreign State, without being engaged in "doing business" in this State, so as to compel such bank to comply with the requirements of section 571 of the Kentucky Statutes.

4.  Corporations—Section 571, Kentucky Statutes.—To give to the non-observance of section 571, the consequential effects of denying a corporation the right of remedy in the courts of this State, as is adjudged in the case of Oliver v. Louisville Reality Co., 156 Ky., 628, applies only to unexecuted contracts, and is non-effectual in a case where the contract has been executed. Such consequences being penal must be limited to cases coming strictly within the limitations prescribed in said case.

5.  Injunction—Judgment Denying Injunction.—Where the remedy sought is that of injunction, and a denial of any interest of title, equitable or otherwise, in the defendant to property claimed exclusively by the plaintiff, and the plaintiff fails by his proof to establish his claim, or his right to the injunction, a judgment dismissing the petition and denying the injunction will not be reversed, although the plaintiff may, upon proper showing and under an appropriate proceeding, be entitled to some equitable rights in and to the property involved, on the ground that he chose his remedy and asked for the specified relief, and if he should fail, he shall not be allowed to have other relief to which he might be entitled by other and totally different proceedings.

WEHLE & WEHLE for appellants.

GIBSON & CRAWFORD and ELLERBEE W. CARTER for appellees.

Opinion of the Court by Judge Thomas—Affirming.

The question submitted for determination upon this appeal is one as to who is entitled to the right of possession and the owner of certain street improvement bonds issued, as provided by sections 3101 and 3102, by the city of Lexington, Kentucky, and delivered by it to the Central Construction Company in payment of certain improvements, which it had made under contract with the city, to certain streets therein. To properly understand the issues presented it is necessary to make a brief statement of the facts.

The Central Construction Company some time previous to June 6, 1913, had been employed by the L. & N. Railroad Company to construct a concrete viaduct under the tracks of the railroad company on Jefferson Street in the city of Lexington, and to insure the proper performance of that contract in accordance with its terms, it executed a bond to the railroad company with the appellant, Citizens Trust & Guaranty Company, as its surety, the latter company being an indemnity corporation incorporated under the laws of the State of West Virginia, and duly authorized to enter into surety contracts and to conduct its business as such indemnity company in this Commonwealth. Its general agent, and the one through whom this surety contract for the Central Construction Company was procured and executed, was one J. F. Gauvreau, whose office was in the city of Louisville, Kentucky. In addition to the premium of $346.00, which was paid to the agent of appellant, there was delivered to him as such agent by the Central Construction Company, certain street improvement bonds of the city of Lexington, which had been given to it for street improvement work, amounting in the aggregate to $2,507.00. Shortly thereafter Gauvreau borrowed from the Crawford County State Bank of English, Ind., the sum of $2,200.00, and pledged to it as collateral security therefor the bonds which he had procured from the Central Construction Company in the manner stated. In procuring this loan from the Indiana bank, he employed the services of the appellee, Edwin W. Hays, who was then, and had been for many years, a stock broker, and as a part of his business would assist persons, who might apply to him, in securing loans and advancements on securities. The note by which Gauvreau procured this money was made payable to himself and was indorsed

in blank by him and delivered to the Indiana bank, who in turn advanced the money upon it; it matured in thirty days and when that time expired it was renewed for three months, which renewal matured on October 7, 1913. On September 25, 1913, the maker of the note and agent of appellant company disappeared from the city of Louisville and his whereabouts are unknown. Appellee Hays, when the renewal note became due, paid it by executing to the Indiana bank his note for the same amount and with the same collateral security, but which collateral security had been delivered into his possession by the bank, and so far as the record shows, he has had dominion and control over it since that time. On January 5, 1914, this suit was filed against appellee Hays and the National Bank of Commerce in the city of Louisville, wherein it is charged that the indemnity contract for and on behalf of the Central Construction Company, as well as the delivery to its agent of the street improvement bonds for the purpose stated, were each and all made and entered into without its knowledge, and that the subsequent appropriation of the street improvement bonds by its agent as collateral security for his own personal obligation, was likewise without its knowledge and consent, and that neither the Indiana bank nor Hays acquired any rights or interest in and to any of the bonds as against it, because as claimant put it, the bonds are not negotiable instruments, free from equitable defenses in the hands of an innocent holder when obtained before maturity; and, because further, that both the Indiana bank and Hays procured the bonds under such circumstances as to charge each of them with actual notice of the manner Gauvreau procured them. The bonds seem to have been in the possession of the National Bank of Commerce as depository only, and the plaintiff sued to enjoin the then defendants from selling, assigning, pledging, or in any manner disposing of the bonds. As the cause progressed the Indiana bank was made a defendant and the same relief was asked against it. It was furthermore charged in the amendment making this bank a party, that in the procuring of the original note in June, 1913, whereby it loaned to the general agent of appellant the $2,200.00, it was then and thereby engaged in "doing business" within this Commonwealth in violation of section 571 of the Kentucky Statutes, and that the contract whereby it obtained possession of the

collaterals was therefore void and it obtained no title thereto, equitable or otherwise. By appropriate pleadings all of these allegations were denied and upon final submission the petition was dismissed, from which judgment this appeal is prosecuted. It may be here stated that the Central Construction Company is also a party plaintiff in the suit; the appellant, Citizens Trust & Guaranty Company suing for itself and for the use and benefit of the Construction Company.

In appellants' brief, counsel urged what they insist upon as "three legal reasons" why the judgment should be reversed, which are in substance:

First. That neither the Indiana bank or E. W. Hays is a bona fide purchaser of the improvement bonds.

Second. That the improvement bonds are not negotiable instruments.

Third. That the Indiana bank was at the time of making this loan engaged in business within this Commonwealth without complying with the requirements of the statute, *supra,* and that it thereby acquired no title unto itself to any of the improvement bonds, and it subsequently could not confer any title upon Hays.

Before considering either of these propositions we will dispose of the contention that appellee had actual knowledge at the time of these transactions of the infirmity of the title of Gauvreau to these bonds, or that he did not hold them as his individual property, but only in trust for the appellant, Citizens Trust & Guaranty Company. Sub-section 56 of section 3720b of the Kentucky Statutes defines what is necessary to constitute such knowledge, as is claimed by appellant, in these words:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

It is claimed by appellants that the facts as manifested by the proof are sufficient to charge appellees with actual notice under such sub-section. We do not so understand or construe the testimony. Up to the time of the mysterious departure of the general agent of appellant, so far as this record shows, he had borne a good reputation in the city of Louisville, although he had upon occasions

issued some checks when he did not have the money to. pay them, or money on deposit at the time, but there is nothing to show but what he afterwards took care of them, except perhaps some checks that were issued within a short while previous to his departure. He had not only been conducting the business of appellant as its agent in a perfectly fair and upright manner, but had also been engaged in buying and selling and dealing in various securities in a manner so as to inspire the belief in the mind of the most cautious and prudent person that he was the absolute and unqualified owner of them. There has been nothing to occur in his manner of dealing to indicate that he was guilty of any infidelity to his principal, or that any of his transactions in such securities were in the least bit tainted with fraud or other suspicious circumstances. He was absolutely unknown to the Indiana bank and its officers, and we do not gather from the proof that it even knew what his business was. The appellee, Hays, was personally familiar with the character of his transactions, as he stated, and had himself had previous transactions with Gauvreau, of the nature mentioned, and there is not the slightest piece of testimony of any probative force to which we have been cited, that would have a remote bearing to fasten upon either of the appellees actual notice as defined by the sub-section, *supra,* of any infirmities in the title of Gauvreau to any of the bonds in question. The fact that Hays, if it be a fact, had knowledge that appellant's general agent had upon occasions refused to pay his debts, or forsooth,. given a check when he did not have sufficient means to meet it, would not possess him with "knowledge of such facts that his action in taking the instrument amounted to bad faith," as is required by the statute. The requirement of the statute as to notice is a wise one. The business of the country, and its commercial transactions, are largely carried on by the use of commercial paper, and the necessities of trade and commerce demand that persons dealing in them shall have their rights guarded and protected unless they are forfeited in the manner pointed out by the law. It is therefore against the policy of the law, and has been for centuries, to permit slight and non-consequential circumstances creating only a remote and chimerical suspicion, to hamper the activities and usefulness of such commercial paper in.

business activities. It was decided in the early case of Murray v. Lardner, 2 Wall., 110, that:

"Suspicion of defect of title or the knowledge of cir-cumstances which would excite suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part." This rule has often been recognized by this court, it going so far in the case of Woolfork v. Bank of America, 10 Bush, 504, as to say:

"Neither want of ordinary care nor gross negligence will divest the holder of his title."

And further on in the same opinion, quoting from 2nd Parsons on Notes and Bills, it says:

"The title of such a holder (bona fide before maturity), is not defeated by proof that he was negligent or even grossly negligent in taking the note or bill, and that he omitted to make inquiries that common prudence dictated."

To the same effect is the case of McCarty v. Louisville Banking Company, 100 Ky., 4, and the doctrine has lately been reiterated by this court in the very recent case of Farmers Bank of Lynnville v. Boyd, 164 Ky., 548. The contrary doctrine holding that if the purchaser at the time was in possession of facts affecting the title to the paper, which if investigated, would divulge the defects in it, he would be charged with notice of such defects, as first announced in the old English case of Gill v. Cubitt, has long since been discarded, and now has no place in the law of a commercial paper. As we have previously seen, neither of the appellees had any knowledge of any fraudulent purpose, or attempted fraudulent purposes, of the general agent of appellee, and neither of them was negligent in failing to make necessary inquiries concerning the title which he had to the bonds. We conclude then that they each, are bona fide purchasers of the bonds within the meaning of the law, and are entitled to protection as such. However, so far as the appellee, Hays, is concerned, he would be a bona fide purchaser for still another reason. The appellee, Indiana Bank, was a bona fide purchaser (unless deprived of that position by reason of contentions hereinafter considered), and the law is well settled that a purchaser before maturity, even with notice, from a bona fide purchaser for value without notice, will be protected against prior equities. Varney

v. Deskins, 146 Ky., 27; Moore v. Dodd, 1 A. K., Marshall, 140; Lindsey v. Rankin, 4 Bibb, 482; vol. 23, Am. & Eng. Ency. of Law, page 477.

This brings us to a consideration of the second reason urged against the judgment, which is, that the bonds in question are not negotiable instruments, and that bona fide purchasers of them before maturity take them subject to all defects and prior equities; in other words, that they are not such instruments as are protected in the hands of an innocent holder by what is known as the Law Merchant at common law, and by our statute on negotiable instruments. The statute under which these bonds were issued, with reference to them says:

"Such bonds shall be negotiable as inland bills of exchange, and shall be free from all defences by any property owner."

As such property owner was not an actual obligor appearing upon the face of the bonds, the Legislature intended to not only make them possess all of the characteristics of negotiable paper, which, strictly speaking, applies only to the holder of such paper and makers and indorsers thereof, but the statute went further, and stamped the bonds with the characteristics of negotiable paper, as to the owners of the property, abutting which the improvement was made, and if our negotiable instruments statute should contain anything in it, militating against the negotiability of such bonds (but which is not herein indicated), section 3102 of the statute, excepts such bonds from its operation, because the section referred to, and under which these bonds were issued was enacted in 1910, six years after the enactment of the negotiable instruments act. Moreover, these bonds possess all of the characteristics of a negotiable instrument. They are made payable to bearer, and title thereto passes by delivery, and whatever may be the adjudications of other courts under totally different statutes, we unhesitatingly conclude that these bonds are negotiable instruments, and that a bona fide holder of them before maturity for value, and without notice, is entitled to all of the protection which the law throws around the holder of such instruments.

It is contended, however, in the third reason assigned, that the Indiana bank was, at the time it made the loan to Gauvreau, and at the time these bonds were pledged to it, "doing business" in Kentucky, and that it

had not complied with section 571 of the Kentucky Statutes by filing with the secretary of the State the name of the person upon whom process might be served, and for this reason, the contract between it and the general agent of appellant, whereby it became possessed of the bonds, was and is totally void, and it obtained thereby, no rights in them whatever. To this we are not prepared to give our assent for many reasons. In the first place, we do not regard this transaction as "doing business" within the contemplation of the section of the statute referred to. Neither the appellee, Hays, nor the National Commerce Bank, or any other person in Louisville, had any right to complete the loan. The borrower made a proposition to the broker, whose commission he paid, and this broker communicated with the bank at English, Indiana, and obtained its assent to the loan. It was at English, Ind., where the minds of the parties met, and it was there that the contract was completed, and the fact that the money would be delivered to the borrower in Kentucky, did not make the transaction a domestic one, or make the bank thereby be "doing business" in Kentucky. Commonwealth v. Hagan, McMorrow & Tieke Co., 25 Ky. L. R., 41; Commonwealth v. Eclipse Hay Press Co., 31 Ky. L. R., 842; Three States Buggy Co. v. Commonwealth, 32 Ky. L. R., 385; Ichenhauser v. Landrum, Asse., 153 Ky., 316; Crenshaw v. Arkansas, 227 U. S., 389; International Text Book Co. v. Pigg, 217 U. S., 91; Sioux Remedy Co. v. Cope, 235 U. S., 197. Moreover, the section of the statute under consideration, as interpreted and applied in the case of Oliver v. Louisville Realty Co., 156 Ky., 628, is highly penal in its nature, and while the purpose of its enactment is laudible, such consequences of its violation as are announced in the case, supra, should be applied to cases and conditions coming strictly within its purview. The bank here is not a guilty corporation seeking the aid of any court of this Commonwealth in the enforcement of any contracts, and the only relation which it now sustains to the bonds is that of a once holder of them. The contract by which it first obtained any interest in them was fully executed before the filing of this suit. Lastly, it is claimed that the bank, being a pledgee, had only an equitable interest in the bonds to the extent of its debt, and that it could convey no greater interest to its co-appellee, Hays, and that his interest therein is one co-extensive with that

of the bank. For the purposes of this opinion only, this might be conceded, but it does not furnish grounds for a reversal of the judgment, because the relief sought herein is an injunction to prevent each of the appellees from, in any manner, disposing of any of the bonds and this suit, proceeds upon the idea, that neither of the appellees has any interest whatever in and to them. This relief was denied by the chancellor in his judgment, and we think correctly. The appellants chose their remedy, seeking relief to which they are not entitled, and they cannot complain because they may be entitled to other and different relief under other and different proceedings. Again, there is nothing in the record to show that the appellants would suffer irreparable injury should the relief sought be denied, nor have they no adequate remedy at law. It is true, in their effort to obtain the injunction, they were compelled to, and did, make the usual allegations entitling them thereto, but the insolvency of the appellee, Hays, was denied by answer, and with the burden on appellants no proof was introduced upon this issue.

Perceiving no error in the judgment appealed from, it is affirmed.