## City of Mount Sterling v. Bishop et al.

(Decided March 19, 1929.)

530

HENRY WATSON for appellant.

W. B. WHITE and W. C. HAMILTON for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

West High street in the city of Mt. Sterling is one of the original streets of the city. White boulevard is a new street laid out through a subdivision of Mt. Sterling known as Bella Vista. It extends from West High street to Reid avenue, and thence to West Main street. H. M. Bishop, one of the appellees, bought a lot lying in Mt. Sterling in 1919, and shortly thereafter erected a dwelling house thereon. This lot fronted on West High street approximately 104 feet, but was only 99 feet in width at the rear. On the west side the lot was 382 feet deep and about 371 feet deep on the east side. The home property of the late Judge Richard Reid, consisting of several acres, lay on West High street immediately west of the property purchased by appellee Bishop, and, in addition to extending south as far as the Bishop property, this lot belonging to the home place of Judge Reid included property south of the Bishep property. It was the Reid property that was known as Bella Vista.

In 1922, J. White Guynn owned Bella Vista and subdivided it into building lots and ran a number of streets through it; White boulevard was thus established. The

location of the property and the lots involved in this suit
are shown in the following plat:

WEST HIGH STREET (STREET FOR MANY YEARS)

WHITE BOULEVARD (OPENED IN 1922)

LOT 36, BELLA VISTA SUBDIVISION
(HART)

LOT 37, BELLA VISTA SUBDIVISION
(BISHOP)

LOT BOUGHT BY BISHOP IN 1919, AND MORTGAGED TO J.S. HAGGARD.

THIS LOT WAS NEVER A PART OF THE BELLA VISTA SUBDIVISION.

LOT 38, BELLA VISTA SUBDIVISION.
(BISHOP)

LOT 39, BELLA VISTA SUBDIVISION. (MILLER)

LOT 40, BELLA VISTA SUBDIVISION. (BISHOP)

An examination of this plat shows that lot 36 in Bella Vista subdivision fronts on West High street and runs back parallel with White boulevard, and that it lies between the property of appellee Bishop and White boulevard. Lot 37 is immediately south of lot 36, and extends back the same distance as the Bishop original lot, and also lies between the Bishop lot and White boulevard. Lot 38 in the Bella Vista subdivision lies immediately south of lot 37 and the Bishop lot and fronts on White boulevard, while lot 40 in the subdivision fronts on White boulevard, but does not adjoin the Bishop lot. Lot 39 lies between lot 38 and lot 40. At the sale of the lots in this subdivision, Bishop purchased lots 37, 38, and 40. These lots were purchased by Bishop at the sale in 1922. In 1923 the city enacted an ordinance providing for the paving of West High street abutting the property of Bishop and also White boulevard abutting the Bella Vista lots purchased by Bishop. After the completion of the work, the city on December 31, 1923, enacted an ordinance assessing the cost of the improvements against the owners of the lots of land abutting on West High street and White boulevard. The amount assessed against the lot fronting on West High street belonging to appellee Bishop was $522.90 for a frontage of 101 feet; the amount assessed against lot 37 in the Bella Vista addition was $972.40; the amount assessed against lot 38 in the subdivision was $660.27; and the amount assessed against lot 40 in the subdivision was $243.10. The amounts assessed against lots 37, 38, and 40 were for the paving of White boulevard, and the amount assessed against the original Bishop lot was for the paving of West High street.

After the assessment of December 31st was made, J. S. Haggard loaned Bishop a sum of money and accepted a mortgage on the lot fronting on West High street as security for the payment of the loan. On December 26, 1925, suit was instituted by the city against Bishop and his wife, the Mt. Sterling National Bank, J. S. Haggard, M. O. Cockrell's executrix, and J. White Guynn and wife, in which it was sought to enforce the amount of the assessments fixed by the ordinance of December 31, 1923; but the petition treats the original Bishop lot, lot 37 in the subdivision and lot 38 in the subdivision as one lot, and sought to enforce a lien against the lot for the total assessments, including the assessment made against lot 40, which does not adjoin either

of the other lots. Haggard was made a party to the suit because of the loan he had made to Bishop and the mort-gage he had executed to secure it. Guynn and his wife were made parties to the suit because in conveying the lots to Bishop they had agreed that the cost of the street improvements would not exceed a certain sum per front foot, and, if the cost exceeded such sum, they would be personally responsible to Bishop for the excess. The city sought to recover the excess from White in this action.

When Haggard filed his answer, he set up all of the facts as stated above, and interposed the defense that the city could not treat the original Bishop lot and lots 37 and 38 as one lot, but that the assessment against each lot separately must stand and that the lot fronting on West High street was responsible only for the assessment made against it, and that it was not responsible for any part of the assessment made against lots 37, 38, or 40. The amount of the assessment against the lot fronting on West High street was erroneously stated, but no objection was made to the amount, and it was not corrected, so the amount alleged in the petition must be treated as the correct amount in this proceeding. After Haggard filed his answer, the city council in June, 1926, enacted another ordinance in which it sought to amend and correct the original ordinance so as to make the assessment against the lot fronting on West High street and lots 37 and 38 one assessment, and sought to make the combined area of these lots one lot.

After the taking of proof, the chancellor entered a judgment in which he held that the assessments made against the individual lots must stand and that the city council was without authority to combine the lots to make the combined assessments a lien against the combined lot. The judgment gave the city a lien against the lot fronting on West High street for the amount of the original assessment against that lot, and enforcing the mortgage lien of Haggard, but decreed that his lien was inferior to the lien of the city for the assessment. The property was sold by the master commissioner and purchased by Haggard for $3,000. Out of that sum, he is required to satisfy the amount due the city by reason of the assessment. Judgment was entered directing the enforcement of the lien against each of the individual lots 37, 38, and 40, and these lots have been sold without realizing enough to pay the lien against them. Bishop is entirely out of the

litigation by reason of these sales, as his property has passed in part satisfaction of the liens.

This appeal involves, first, the correctness of the chancellor's judgment in holding that the city council was without authority to combine the lots into one lot and the assessments into one assessment. We recognize the rule that there are cases where several lots are thrown together, used in common, and become one piece of property, and in such cases one assessment may be made against all the lots as if they constituted one lot.

This is not such a case; these lots had not been thrown together and used as one lot; they were entirely separate; they fronted on different streets. The lot fronting on West High street did not abut on White boulevard; the other three lots abutted on White boulevard; and they were laid out, platted, and designated prior to the street improvement work. The city was without authority, under the proof in this case, to treat all of these lots as one lot and combine the assessments against it. Such a procedure has been condemned in several cases, among which may be mentioned Fischer v. City of Covington, 155 Ky. 290, 159 S. W. 941, R. W. Davis & Co. et al. v. McDonald, 200 Ky. 828, 255 S. W. 833, and Pursiful v. City of Harlan, 222 Ky. 658, 1 S. W. (2d) 1043.

It is true that the city sought to enforce its lien against the combined lot for the combined assessments, but the chancellor separated the combined lot into its constituent parts and adjudged the respective liens against the respective lots. The judgment of the chancellor is supported in this respect by the case of Andrews Asphalt Paving Co. v. Brammel, 221 Ky. 323, 298 S. W. 956.

It is urged by counsel for the city that it was entitled to a personal judgment against Bishop because he signed an agreement whereby he waived all irregularities as to the assessment against the White boulevard lots and agreed to pay these assessments upon the ten-year plan. This question has not been directly determined by this court. In the case of Heller & Co. et al. v. Hunt Forbes Construction Co., 223 Ky. 168, 3 S. W. (2d) 206, this court held, however, that, by the signing of a waiver of defenses under section 3101, Kentucky Statutes, the owner "binds and pledges all of his property against which the assessment is made, in lien, and that such property owner, signing such waiver and any subsequent owner of such property were estopped, precluded, and prevented from

making any defenses." If that is the sole purpose of signing the waiver, the owner does not bind himself personally to pay the assessment but only waives all irregularities and places the property against which the assessment is made in lien for the security of the payment of the assessment.

Section 3563, Kentucky Statutes, provides that the cost of the improvement of streets shall be "apportioned among and assessed upon the lots or parcels of real estate abutting feet, and a tax shall be levied upon such lots or parcels of real estate for the payment of the cost assessed thereon." The assessment is against the real estate and not against the owner.

Further in the same section, it is provided that the city treasurer must keep a book showing the name and portion of the street in which the improvement is made, the character of the improvement "and the names of the persons against whose property the assessments are made."

Section 3573, Kentucky Statutes, refers to making the assessment against the "property" liable for the cost, while section 3574 provides that the lien against the "property" shall take precedence over all other liens.

Section 3575 relates specifically to the 10-year payment plan; it gives to the owner of the property the option to pay in cash, but the owner may accept the 10-year payment plan. "Any property owner who desires to exercise such privilege of payment by installment shall, before the expiration of the said thirty days, enter into an agreement in writing with the city that in consideration of such privilege he will make no objection to any illegality or irregularity with regard to the taxes against his property, and that he will pay the same in the manner herein provided, with specific interest. Any property owner entering into such an agreement or who exercises the option to pay in installments, shall be concluded thereby, and shall not be permitted to set up any defense whatever against the payment of such taxes." There is a further provision in that section that any default of payment of any installment of tax or interest for one month after the same becomes due, a penalty of 10 per cent. of the installment in arrears shall be added thereto, which shall constitute a like lien as the tax, and all unpaid installments of the tax shall, at the option of the city or any bondholder, whose bonds or interest there-

on are in default of payment, forthwith become due and payable.

There is a further provision in that section as follows: "Failure on the part of the city to collect any such local tax or installment thereof, when due, shall create no liability against such city, but the person entitled to such tax, or the owner of any such bonds, shall have the right to proceed in any court of competent jurisdiction to foreclose the lien for such unpaid assessments, recovering interest and costs, and may have the proceeds of the property applied in settlement thereof."

It will be observed that nothing is said about a personal judgment against the owner in the quoted provision which provides the remedy for the collection of the tax. If the General Assembly had intended that a personal judgment should be obtained against the owner, doubtless it would have embodied such a provision when it provided the remedy for the collection of the tax. A consideration of the entire scheme provided by the General Assembly for street improvements at the cost of the abutting property owners is convincing that the assessment is against the property alone, and that no personal judgment may be obtained against the owner of the lots. Therefore the chancellor did not err in his conclusion that no personal judgment should be awarded against the owner of the lots.

It is next insisted by the city that it was entitled to a personal judgment against J. White Guynn and Lena Guynn by reason of the provision in the deeds conveying the lots to Bishop. They were made parties defendant in the action, but they filed no answer. An examination of the petition shows that the allegations were not sufficient to require them to answer, as there is nothing in the petition which would authorize the entry of a judgment against them. The chancellor dismissed the petition as against them, and complaint is made about that. The petition alleged "that J. White Guynn and Lena Guynn are necessary parties to this action by reason of being interested therein by way of a certain contract entered into by the city of Mt. Sterling which is of record in said clerk's office of said county." The contract referred to does not appear to have been filed with the petition. There is a deed in the record from Guynn and his wife to Bishop for certain lots; they agreed that the cost of the street improvements would not exceed $4.90 per front foot. The assessment was less than that. Therefore

there was no liability to any one resting on them under the provisions of the deed. It was held, in the case of Holzknecht v. Louisville Deutsche Scheutzen Gesselschaft, 195 Ky. 189, 241 S. W. 804, that the rule is universal that a default judgment cannot be sustained unless it is supported by the pleadings. It was also said in that case that a confession of the allegations of the pleadings by failing to appear and respond and the consequent suffering of a default judgment does not waive the defects of an insufficient pleading, as the default operates as an admission only of those facts which are well and properly pleaded in the petition.

Again, in the case of Bond et al. v. Wheeler et al., 197 Ky. 437, 247 S. W. 708, the rule was announced that in order to sustain a default judgment there must be a sufficient petition, and that failure to appear and respond to its allegations operates only as an admission of such facts as are well and properly pleaded.

If the city could proceed against Guynn and his wife in this action, which we do not decide, yet we are clearly of the opinion that the pleadings did not authorize a judgment against them.

It is insisted by counsel for the city that the court erred in not allowing a 10 per cent. penalty on the amount adjudged to be due by reason of the assessments. It is argued by counsel for appellees that no penalty should have been awarded because the city was seeking to collect an erroneous assessment. The assessment was correctly made originally, and there is nothing to show that Bishop made any tender of the assessment due in accordance with the agreement which he signed.

Section 3563, Kentucky Statutes, provides for the imposition of a 10 per cent. penalty for a default in the payment of an assessment for 30 days. When the 10-year payment plan is accepted by the taxpayer, he must pay the assessment within 30 days or a 10 per cent. penalty attaches on the assessment in arrears. Section 3575. The city may declare the entire amount due, and in such cases it would seem that the 10 per cent. penalty should be imposed 30 days thereafter on the entire amount. In the recent case of City of Mt. Sterling v. Childers, 11 S. W. (2d) 1008 (decided December 18, 1928), this court held that the penalty should be imposed, although the taxpayer was insisting that the amount claimed by the city was erroneous. The correct amount

had been definitely ascertained; and the taxpayer had only tendered the amount which he considered to be due. In the case under consideration, the correct amount had been definitely ascertained by the city, and it was not paid, nor the amount tendered prior to the time that the city declared all of the installments due. When the city exercised its option and declared all of the installments due, they were all in arrears, and the penalty therefore attached 30 days thereafter.

The report of the master commissioner shows that the sale of lots 37, 38, and 40 resulted in a failure to realize a sufficient sum to pay the amount of the assessments without the penalty. The question of penalty as to these lots, therefore, is not material, although the court should have imposed the 10 per cent. penalty and the judgment should have been for the assessment plus the penalties. It is contended by counsel for Bishop that $52 had been paid on the assessment against the lot fronting on West High street, and that the payment was sufficient to take care of the penalties, but the judgment of the court gave Bishop credit on the principal by the sum of $52, which had been paid, leaving a balance due of $413.80, with interest from July 1, 1924. The penalty should have been imposed on this amount, but the failure of the court to impose the penalty does not warrant us in reversing the judgment on account of the smallness of the error, but the court may enter a supplemented judgment directing Haggard to pay the amount of this penalty to the city in addition to the amount fixed by the original judgment.

Judgment affirmed.