### Chesapeake & Ohio Railway Company v. City of Olive Hill.

(Decided October 15, 1929.)

HUNT & BUSH and JOHN M. THEOBALD for appellant.

DYSARD & MILLER, S. S. WILLIS and R. T. KENNARD for appellee.

Opinion of the Court by Judge Logan—Reversing.

The city of Olive Hill improved Railroad street, and the Chesapeake & Ohio Railway Company owned property abutting that street. The railroad company did not pay the assessment, and suit was instituted by the city, seeking to enforce the lien given by law against the abutting property of the railroad company. The case was prepared for trial, and, at the conclusion, the chancellor entered a personal judgment against the railroad company for $2,994.13, with penalties, cost, and interest. There was no judgment enforcing the lien and no order of sale. No personal judgment was authorized. It was not prayed for. The court was without authority to enter such a judgment, and because of this error the case must be reversed. Ormsby v. City of London, 220 Ky. 148, 294 S. W. 1029; City of Mt. Sterling v. Bishop, 228 Ky. 529, 15 S. W. (2d) 416; Moss et al. v. Andrews Asphalt Paving Co., 229 Ky. 419, 17 S. W. (2d) 255.

But it is contended by counsel for appellee that the entry of a personal judgment in this case was a clerical misprision, which should have been corrected by motion in the lower court. We do not think so. Newman's Pleadand Practice (2d Ed.) sec. 681; Napier v. Trace Fork Mining Co., 193 Ky. 291, 235 S. W. 766; Combs' Guardian v. Deaton, 199 Ky. 477, 251 S. W. 638; Gayheart v. Childers, 137 Ky. 472, 125 S. W. 1085.

But it is also contended by counsel for appellee that a personal judgment is not improper in a case seeking to enforce an apportionment for street improvements against the abutting property of a railroad company. They cite respectable foreign authority for their contention, but the court is unwilling on the record as here presented to follow the authorities cited. It would be an amendment to the statute without legislative authority. A state of case might be presented where a personal judgment would be authorized, but we find no reason to depart from the ordinary method of enforcing such assessments in this case.

Appellant attacks the proceedings of the board of council as being irregular, and on the ground that some of them were so fundamentally wrong as to render them void. Section 3574, Ky. Stats., contains this provision: "Nor shall any error of the proceedings of the board of council exempt any property from the lien for, or pay-

ment of, such taxes after the work has been done and accepted as provided in this section; but the board of council or the courts in which suits are pending shall make all corrections, rules and orders to do justice to all parties concerned.''

This is a wise provision of the law. Abutting property owners should not be allowed to stand idly by while contractors are spending money in the construction of streets, and after the work has been completed and accepted by the city come into a court of equity and make the contention that there were irregularities in the proceedings, such as to enable the property owners to escape the payment of the assessment. Justice and equity are on the side of the city and the contractor, and there must be some insuperable legal obstacle in the way, before a court should grant relief to a taxpayer under such circumstances. It is right that it should be so. The courts are open to taxpayers before the work is performed, and if they think that there has been an invasion of their legal rights by a city council, or those in authority, the proper remedy is to proceed by injunction before the work is done. The law just quoted declares that no irregularity in the proceedings shall exempt property from the lien given by the statute after the work has been done and accepted, but it confers upon the city council and the courts authority to corrrect errors and to do justice.

The first complaint made by counsel for appellant is that in apportioning the assessment the city council did not apportion to every front foot on the streets the same amount. It is true that the city council made the assessment less against a narrow street than against a wide street. The appellant denies the correctness of such an assessment, but, under the authority of the statute quoted, the city council, as well as the courts, may do that which is fair and just. It will not be denied that it costs more to build a broad street than it does a narrow street, and there is no inequality in making the assessment per front foot less against the property abutting on a narrow street than against the property abutting on a broad street. It is argued that the ordinance passed by the city council providing for the construction of the streets did not allow any discriminations. If so that was an error which the council had the right to correct in making the apportionment.

Counsel cite and rely on the case of Wendt v. Tucker, 185 Ky. 626, 216 S. W. 61, as supporting their contention that the assessment per front foot should have been uniform in amount. That case, as we understand it, does not so hold. The question there was whether the assessment of any part of the cost of the drain and catch-basins should be apportioned to the property of Tucker. His property did not abut the portion of the improvement where the drain and catch-basins were located. It is true that the court held that, the ordinance having directed the entire cost to be apportioned against all the property owners on the particular street, the cost of the drain and catch-basins was distributable over the entire street. The record does not seem to show that the drains and catch-basins were not for the benefit of the entire street. It was considered as a unit, and the topographical conditions made it necessary to place drains and catch-basins at particular places on the street. Without them the street would have been imperfect and incomplete.

Another case relied on is City of Shelbyville v. Hall, 210 Ky. 830, 276 S. W. 987. In that case Main street in the city of Shelbyville had been improved on the north side. The city council ordered the south side improved, and the property owners on the north side objected to the assessment of any tax against their property for the improvement of the south side. The court held no more in that case than that the abutting property on both sides of the street was subject to the lien for the cost of improving the entire street.

Another point made against the assessment is that the ordinance did not include the curbing on Railroad street, and that the cost of the curbing should not have been included as a part of the cost of the street. We disagree with counsel in their contention. The ordinance provides for the improving of the streets by paving from curb to curb, inclusive. The wrod "inclusive" must refer to the curb, as it would have little meaning otherwise. It is true, as argued by counsel, that from curb to curb does not include curbing; but, when the ordinance said that the curb should be included, it follows that it was included. If the city council deemed that it was necessary that curbing should be only on a part of the street, and not on all of it, still appellant cannot complain, under the authority of Wendt v. Tucker, supra.

The next contention that is made by counsel for appellant is that the resolution of necessity for the improve-

ment of the streets was never adopted by the city council. A city can speak only through its records. Turning to the copy of the resolution as it appears in this record, we find an elaborate resolution calling for the improvement of certain streets, with the notation at the bottom of it that it was passed by the city council on the 10th day of August, 1925. It is signed by the mayor and the clerk. It is insisted that the records show that no vote was taken on the resolution. The minutes of the city council contain this statement: "It was regularly moved and seconded that the following resolution be read in open council. The vote being made as follows: Donovan, yea; Kirby, yea; Bobley, yea; Holly, yea; Scott and Roberts, absent." Following this minute the resolution was pasted in the record book.

Under the provisions of section 3570, Ky. Stats., such a resolution must be adopted. The minute shows that a vote was taken, and while it is awkwardly expressed the resolution itself shows that it was passed on that date. The minute, strictly construed, is irregular, but it is not such an irregularity as would authorize the court to say that it was not voted upon or adopted at that meeting. The minute would mean nothing, if it should be construed to mean that the vote was taken on whether the resolution should be read. The apparent meaning of the minute is that it was presented and passed.

Appellant relies on the case of Mulligan v. McGregor, 165 Ky. 222, 176 S. W. 1129. The court held, in that case, that the property owners were deeply concerned in ordinances and resolutions that imposed burdens on their property, and that they have the right to know what the city council is doing, or intends to do, in respect to special assessments, so that they may be in position to take such action as circumstances and conditions may dictate. Can it be said that any property owner was denied knowledge of what the city council intended when the resolution appeared in the record book showing that it was passed, and the minutes on the record book showed that it was read and voted on? In the case of City of Newport v. Klatch, 189 Ky. 300, 224 S. W. 844, it was held that the provision requiring the passage of a resolution of necessity was mandatory, and that the purpose was to give to the property owner notice of the intention of the city to make the improvement, and to assess his property therefor, so that he might take what-

ever action he saw proper, either in court or out of it, to protect his rights, if they were about to be infringed. It would be manifestly supertechnical to hold that the resolution passed by the city council on August 10th was not sufficient to serve the purpose contemplated by the General Assembly, when it enacted the law requiring the passage of such a resolution. The case of Wait v. Southern Oil & Tar Co., 209 Ky. 682, 273 S. W. 473, relied on by appellant, does not uphold the contention that the resolution in question was void.

The next contention is directed at the validity of the improvement ordinance passed March 23, 1926. It is attacked upon the ground that there is no record showing two readings of the ordinance in question before the council with ten days intervening between the readings. The record shows that on March 10, 1926, there was entered on the records this minute: "The street paving ordinance was read in open council for the first time and laid over until March 22." On March 22d the city council met and adjourned until the next day. On that day it enacted an elaborate paving ordinance. It is the contention of counsel for appellant that the records do not identify the ordinance which was passed as the one which was read on March 10th. The ordinance which was read on March 10th, according to the testimony of the city clerk, was kept by him securely, as were all other ordinances. Any taxpayer, desiring to see the proposed ordinance, would have known what it contained as fully as if the minute had named the streets which were to be improved. There is no pretense that the ordinance which was passed on March 23d was not the same as that read in the council on March 10th. We think it is too late for appellant to raise the question that the identity of the ordinance is not sufficiently established. The question of the identity of the ordinance was before this court in Baker, Mayor, v. Combs, 194 Ky. 260, 239 S. W. 56, and the court upheld the ordinance; but the facts were materially different from this case.

Another point raised by appellant is that the ordinance is fatally defective, because it did not designate the material to be used in the improvement of the streets in question. The ordinance provides that the paving shall be with reinforced concrete, bituminous macadam, Kentucky rock asphalt on macadam base, brick on concrete, or sheet asphalt on concrete, as selected by the city

council. Those bidding on the contract were advised that the city council would select one or the other of the materials mentioned in the ordinance. Section 3571, Ky. Stats,. confers upon the city council the power to select the kind of material, or materials, to be used. Not only the ordinance, but the resolution as well, named the materials, one or the other of which should be used on the different streets. Alternative bids were proper under such a letting, or rather bids on the different kinds of material, with the authority in the city council to determine the material which should be used. The letting was advertised and bids submitted, and a contract was made with the successful bidder. We must hold that the material to be used was sufficiently identified.

It is next contended that the bid was not accepted by ordinance. There is a resolution passed by the council, or order, showing that George L. Pence was the lowest and best bidder, and, on motion, the contract was awarded to him by the city council, and the vote on the motion to award the contract to him was taken by yeas and nays and entered on the record. Later an ordinance was adopted accepting the bid, which is pasted in the back of the minute book. It is too late to raise any question about the acceptance of the bid at this time, and, besides, we think, the bid was properly accepted.

It is suggested that the mayor was never authorized to sign the contract between the city and the contractor, but this is without any merit. He signed it, and the work was done under the contract. The chancellor should have fixed the amount of the assessment, and directed the enforcement of the lien by a sale of the abutting property.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.