## City of Irvine v. Wallace.

(Decided May 4, 1934.)

.HUGH RIDDELL for appellant.
JOHN W. WALKER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This appeal by the city of Irvine challenges the regularity of the proceedings resulting in a judgment in favor of the appellee for the sum of $2,376.40 with interest and costs.

The facts are these: The appellant, city of Irvine, is a municipal corporation of the fourth class and, as such, on November 12, 1924, pursuant to ordinances duly passed, allotted a contract for the improving and paving of certain of its streets to C. Hodge Hockersmith & Co., a partnership, of which the appellee, James A. Wallace, was a partner. Hockersmith & Co., with the approval of the city, transferred this street paving contract to the Irvine Construction Company, hereinafter called the company, of which both Hockersmith and the said Wallace were officers and stockholders.

It is admitted that this contract was carried out and completed by the company in accordance with its terms. This street improvement work embraced in the contract was laid off into separate sections and constructed under the statutory ten-year bond plan and bonds were issued for the several separate sections into which divided. As same were completed, the cost of the work was apportioned and assessed against the abutting property.

It is agreed that the appellee, James A. Wallace, was, throughout the period in which the transactions here involved occurred, the president or cashier of the Farmers' Bank of Estill county and also the president and chief officer and stockholder of the Irvine Construction Company, and that he occupied adjoining rooms in the said bank building as offices, wherein he managed and handled the respective affairs of the two corporations.

It appears that upon the completion and acceptance by the city of these several sections of completed street work, the city issued in payment therefor some $98,000 of improvement bonds, which it advertised for sale,

when—no bids being received therefor—they were turned over at par to the Irvine Construction Company, which were accepted by it in payment for its construction work and receipted for by the company by its president, the appellee, James A. Wallace.

It further appears that, when some four of these sections of street work were completed and the cost apportionment thereof made against the abutting property, some of the owners of them elected to pay the special improvement tax assessed against their property in cash. However, notwithstanding the fact that some of the property owners paid their special assessment in cash, bonds were issued for the total cost of these sectional improvements, wtihout deduction made in their amount for the $1,280 of cash payments made to the city and which was, by its treasurer, at the time turned over to the construction company. Also, it further appears that these $98,000 of improvement bonds thus acquired by the company were by the appellee, its president, in part negotiated and sold before maturity to his bank and other purchasers, and the remainder purchased by him.

Later, some nine of these bonds—owned by the appellee—becoming due, they were presented for payment to the city and payment refused, when an action was instituted thereon by the plaintiff against the city, wherein were alleged the facts substantially as above set out, seeking recovery of their amount in the sum of $5,800, and interest.

Answer was filed, denying the allegations of the petition and pleading the excess issue of bonds by the amount of the cash payments, of some $1,280, made upon the cost of the street improvement, as stated, and counterclaiming for the amount of such overpayment, with interest, against plaintiff's claim on the grounds that plaintiff, as the president and managing officer of the company at the time of the delivery of the improvement bonds to it, had full knowledge of the overpayment and resulting overissue of bonds and therefore had accepted the same with knowledge of the city's right to offset the cash payments against the bonds sued on.

Plaintiff by amended petition further pleaded that while he was indebted to the city in the amount of some $3,000 for delinquent city and school taxes for the years 1929, 1930, and 1931, the city was at all times during

which the city taxes were due and owing by him indebted to the plaintiff upon these improvement bonds in a sum in excess of his tax debt owing the city, but, notwithstanding such fact of mutual indebtedness, the city had advertised and was threatening to sell plaintiff's property for the purpose of satisfying the taxes, with interest and penalties thereon, owing it; that the defendant city was not justly entitled to either penalty or interest upon the taxes owing it during this time when it was indebted to him; and prayed that the defendant's answer, counterclaim, and set-off, seeking a deduction from the amount of plaintiff's bonds sued on of the stated bond issue excess, or some $1,280, be dismissed or, if same could not be done, that deduction be allowed against plaintiff's bonds sued on only for the pro rata amount of such excess of $1,280 or as the amount thereof of $5,800 compared with the full amount of the bond issue of $98,000.

Issues being thus joined and proof taken, the cause was submitted for judgment, when the court adjudged that the plaintiff was indebted to the defendant city for taxes for the years and in the several amounts stated, but·that against such adjudged tax indebtedness the defendant city was then owing the plaintiff certain stated and adjudged amounts upon the improvement bonds sued on,·leaving a balance of $2,376.30 due plaintiff by defendant upon this accounting, which it adjudged the plaintiff to recover with interest and that the collection of the adjudged amount be enforced by rule, mandamus, or other proper remedy.

From the court's order overruling defendant's motion and grounds for a new trial, it prosecutes this appeal, and for reversal of the judgment, the defendant city urges: (1) that the appellee cannot maintain this action against it upon the street improvement bonds; (2) that, should it be adjudged plaintiff could so maintain his suit against it, that he is without right to .set off his claim against the city's claim against him for delinquent taxes; and (3) that the appellee accepted and held the street improvement bonds subject to a credit for the amount of the excess or overissue of bonds made for the improvement cost of the four·sections of street work as stated.

Turning our attention to the disposition of these contentions as made, we will consider appellant's first

objection, that the appellee, Wallace, was without legal right to sue the city upon these street improvement bonds.

By section 3577 of the charter of fourth class cities, which relates to the construction of its public ways and payment of the ten-year bonds issued therefor, it is provided:

"Said bonds and interest thereon shall be payable exclusively out of funds actually paid to and collected by the city on account of the improvement taxes in anticipation of which the bonds are issued, and except as provided in this section, the city shall in no event be liable on any such bond except to the extent of funds actually paid to it as above set out. * * * Such bonds shall convey and transfer to the owners thereof all lien, right, title and interests in and to the assessments, taxes and liens upon the respective lots and parcels of ground, * * * which liens shall stand as security for such bonds and coupons until they are paid, with full power to enforce the collection thereof, if such bonds or coupons be not paid on presentation to the treasurer, by foreclosure in any court of competent jurisdiction as provided in section 3574."

Further, by section 3574 it is provided in part as follows:

"Such liens may be enforced, as other liens on real estate, by action in the name of the city or the contractor entitled thereto."

And by section 3575 it is further provided that:

"Failure on the part of the city to collect any such local tax or installment thereof, when due, shall create no liability against such city, but the person entitled to such tax, or the owner of any such bonds, shall have the right to proceed in any court of competent jurisdiction to foreclose the lien for such unpaid assessments, recovering interest and costs, and may have the proceeds of the property applied in settlement thereof."

It will be noted by the quoted provisions of these statutes that not only is it provided that the payment of the improvement bonds of the city, issued under this ten-year plan for the payment of its street improvements, is limited exclusively to the funds actually paid

to and collected by the city on account of the improvement taxes, but in addition thereto it is expressly provided that the city shall in no event be liable on any such bond, except to the extent of the funds actually paid to it by the abutting property owners therefor, and that, for the collection of this tax lien impressed against such abutting property, the statutes provide that the same may be enforced as other liens on real estate by action brought in the name of the city or the contractor entitled thereto, thus imposing a duty upon the holder of the bonds to look to their proper collection by giving him the right to sue in his own name or, upon his making written request of the city, as directed, it becomes the duty of the city in such instance to prosecute in its name a suit for the enforcement of the lien against the abutting property of the delinquent taxpayer.

Further, in construing this section of the statutes, this court has held that such contractor may sue and enforce his lien arising out of street construction against the abutting property owner, without even joining the city in the action. L. & N. R. Co. v. Southern Roads Co., 217 Ky. 575, 290 S. W. 320. As said in the case of Peters v. Horn et al., 209 Ky. 688, 273 S. W. 519:

"The entire scheme of street improvement at the expense of the abutting property owners found in charters of cities of the fourth class was devised to relieve the city of all liability, and to fasten upon the abutting property owners full liability for street improvement. Nothing required to be done by the city, in enforcing the assessments, is for its pecuniary profit."

And to like effect is the express provision of the statute quoted, that "failure on the part of the city to collect any such local tax or installment thereof, when due, shall create no liability against such city," as the cost of the improvement work done under the ten-year plan of the statutes becomes not the debt of the city but a special tax assessment against the property abutting upon the improved streets, for the enforcement of which the contractor is, as stated, given the right to proceed by suit brought in his own name as well as in that of the city, for his use and benefit, when it is properly requested to sue for him.

Appellee relies upon the cases of City of Catletts-

burg v. Citizens' National Bank of Ironton, 234 Ky. 120, 27 S. W. (2d) 662, 665, and City of Covington v. McKenna, 242 Ky. 452, 46 S. W. (2d) 760, as announcing a different rule of liability from that provided by the statutes. We, however, do not agree that such is the holding and the principle of these cases, which in their facts and the relief granted thereon against the city are clearly distinguishable from the facts of the instant case. In the Catlettsburg Case, supra, the municipality had failed to take the initial steps necessary to perform its duty to enforce liability against the abutting property for street improvements. There the court said:

"In short, the case is one where the city failed to take the steps necessary to make the abutting property liable, and to enforce such liability. In the circumstances we conclude that there was such a breach of duty on the part of the city as to make it liable on the bonds in question."

And again in the Covington Case, supra, the action was brought by the contractor to recover of the city, on the ground that the city never took the necessary steps to assess the cost of the improvement on the abutting property. The making of such an assessment of the cost of the improvement and its apportionment on the abutting property was under the statutes the duty of the city and a condition precedent to the right of the contractor to either secure or enforce a lien against such abutting property for its improvement cost. In such case, the city, by its breach of duty in failing to do these things, tied the hands of the contractor, so that he could not exercise the right given him under the statutes to sue in his own name for the collection of the debt and it was therein held, because of such breach of duty by the city, it should be held liable to the contractor injured thereby, notwithstanding the contract provided for the improvement at the cost of the abutting property owners. The language of the opinion as quoted by appellee must be interpreted and construed as meant to apply and state the rule of law applicable to the facts of that case. The rule as there stated and as applicable to the situation and particular facts of that case we approve. Here, however, the facts are different as it is stipulated by the parties that "the streets were completed according to contract and apportionment of cost to the abutting property owners was duly made for the improvement and the apportionment accepted." The distinc-

tion between the facts of the present case and those in the cases relied on by appellee is therefore manifest in that here the appellee bond owner has been in a position, ever since the bond became due, to collect the same by enforcing his lien against the abutting property for the cost apportioned against it, whereas in the cited cases the contractor was without such remedy by reason of the city's having failed in its duty to make such assessment and apportionment of the cost against the property required as a condition precedent to the contractor's securing the right to enforce the assessment lien so made aginst it.

We are, therefore, for such reasons of the opinion that, as here the city under the statutes was not liable for the improvement costs of its streets and had not made itself liable by failing in the discharge of its duty to assess and apportion the street improvement cost against the property, the judgment of the chancellor in holding it liable was erroneous and must be reversed.

Further, it is our opinion that appellant's second contention is also meritorious, when insisting that the court erred in allowing plaintiff to plead by way of set-off to the city's delinquent tax claim held against him the claimed indebtedness of the city to him upon the improvement bonds. The general rule is well settled adversely to plaintiff's contention. In Bd. of Drainage Com. of McCracken County v. Graves County, 209 Ky. 193, 272 S. W. 387, this court said:

"Ordinarily, in an action to enforce the payment of taxes, levied by the state or any political subdivision thereof for any of its lawful purposes, the defendant cannot set up as a defense a debt due him from the taxing power. Newport & Cincinnati Bridge Co. v. Douglass, 12 Bush, 715; Anderson v. Mayfield, 93 Ky. 230, 19 S. W. 598, 14 Ky. Law Rep. 370; City of Somerset v. Somerset Banking Co., 109 Ky. 549, 60 S. W. 5, 22 Ky. Law Rep. 1129; Newman's Pleading and Practice, vol. 2, sec. 839; Cooley on Taxation, p. 13. * * *

"The reason for the rule is that to permit a set-off or counterclaim to be pleaded against a claim of the state or political division thereof for taxes might hinder, delay, or even prevent the exercise of its sovereign power."

To like effect see 61 C. J., sec. 1391, p. 1058, and 26 R. C. L., sec. 337, p. 378, where the rule is thus stated:

"It is well settled that no right exists in law or equity to set off against taxes a debt of equal amount due to the taxpayer from the municipality to which the tax is payable. Taxes are levied to raise money for specific purposes, as indicated by the appropriations of the current year, and a taxpayer cannot, by exercising the right of set-off, divert the taxes to another purpose, namely, the payment of the debt due to him."

Western Union R. Co. v. United States, 101 U. S. 543, 25 L. Ed. 1068; Aplin v. Board of Sup'rs of Grand Traverse County, 73 Mich. 182, 41 N. W. 223, 16 Am. St. Rep. 576; Village of Charlotte v. Keon, 207 N. Y. 346, 100 N. E. 1116, 46 L. R. A. (N. S.) 135, Ann. Cas. 1914C, 338, and note.

Also, section 180, Kentucky Constitution, provides that no tax levied and collected for one purpose, which must be distinctly specified, shall ever be devoted to another purpose.

As to appellant's third contention, that the appellee under the circumstances stated took the bonds subject to a deduction from their amount of $1,280, cash payments made on the apportionment costs of the improvement, notwithstanding the fact the bonds were issued in the amount of $98,000, the total cost of the street improvement, it is to be noted that it is stipulated by the parties that appellee had no actual knowledge of these cash payments made upon the cost of the street improvements, though appellant contends that as appellee was president and manager of the construction company receiving the bonds, he was, by virtue of his position as such official and manager of its affairs, charged with knowledge that these payments had been made to and received by the company and that the bonds were accepted by him for the company, subject to the right of the city to set off against them the amount of such overpayment. However, in view of the conclusions hereinabove reached by us upon the other grounds of objection, we do not deem it needful to enter upon an extended discussion of this contention; but suffice it to say that the bonds here sued on were by their terms made payable to bearer and were improvement bonds which were by the express provisions of the statutes made

negotiable as inland bills of exchange and free from all defenses by any property owner, and, as such, in the case of Citizens' Trust & Guaranty Co. v. Hays, 167 Ky. 560, 180 S. W. 811, were held to be negotiable instruments and that a bona fide holder buying them before maturity for value, and without notice, is entitled to all of the protection which the law throws around the holder of such instruments. See, also, section 3720b-56, Kentucky Statutes, which provides that:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Here it is stipulated that the appellee had no actual knowledge of the previous cash payments upon the bonds. Therefore, he having purchased them before maturity and without knowledge of the defensive facts pleaded, the same is here not available as a counterclaim upon the bonds, by which, however, we do not mean to imply or intimate that such plea of cash payment made to the city by the abutting property owners of the special assessment against their property would not be available and effective as a defense against enforcement of the bond lien against same.

We are, therefore, for the reasons stated led to conclude that the judgment should be reversed and the plaintiff's petition, seeking a recovery or judgment against the city, dismissed and that he be left to the collection of his improvement bonds by proper action, brought in his own or the city's name, to enforce his lien against the property abutting upon the improvements for which the bonds were issued.

Judgment reversed; costs to be equally divided.