## Campbell Const. Co. v. Williamson et al.
(Decided March 17, 1936).

CHILDERS & BOWLES for appellant.

J. ERWIN SANDERS, STRATTON & STEPHENSON, and A. S. RATLIFF for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Pikeville, a city of the fourth class, by ordinances duly enacted, authorized the construction of certain streets in the city, including Julius avenue. The Campbell Construction Company was the successful bidder for the work, and it completed the construction of the streets in the autumn of 1925.

T. J. Williamson owned a number of lots fronting on Julius avenue, and they were duly assessed with their proportionate part of the cost of construction. Williamson elected to pay the assessments against his lots on the 10-year payment plan, and, within 30 days after the passage of the acceptance ordinance, he and other property owners signed a writing in which they elected to pay on that plan, and agreed to make no objection to any illegality or irregularity with regard to the tax assessed against their property. The amount of street assessments not paid in cash within 30 days after the passage of the acceptance ordinance, and for which it was necessary to issue bonds, was $20,824.42. The city of Pikeville issued its serial bonds in that sum, and delivered them to the contractor, Campbell Construction Company. The bonds were dated January 7, 1926, and the interest was payable semiannually, the first payment falling due July 7, 1926.

T. J. Williamson failed to meet the first payment of interest, and on October 20, 1926, the Campbell Construction Company brought an action against him in the Pike circuit court, declaring the whole of the assessment due, and asking judgment against him for $4,811.93. Default judgment was rendered against T. J. Williamson on December 10, 1926, for the full amount of the assessment, and the Campbell Construction Company was adjudged a lien on the various lots fronting on Julius avenue owned by Williamson, and the property was

ordered sold to satisfy this lien. The property was bid in by D. C. Williamson, son of T. J. Williamson, for $5,379.79, the amount of the assessment with interest and costs. The purchaser executed a sale bond with his father, T. J. Williamson, as surety. The master commissioner filed his report of sale on April 6, 1927, and it was confirmed on July 29, 1927. The sale bond was not paid at maturity, and on September 26, 1927, an execution was issued from the Pike circuit court against D. C. Williamson and T. J. Williamson for the full amount of the sale bond, and on November 17, 1927, a levy was made under the execution by the sheriff on a house and lot, located on Third street in the city of Pikeville, owned by T. J. Williamson. No further steps seem to have been taken until February 29, 1932, when a motion filed by the Campbell Construction Company in the action of W. K. Steele, Receiver of the Estate of T. J. Williamson, v. Commonwealth Life Insurance Company, pending in the Pike circuit court, asking permission of the court to sue the receiver of T. J. Williamson, was sustained. It appears that subsequent to the execution of the sale bond, the principal, D. C. Williamson, was adjudged a bankrupt, and T. J. Williamson, his surety, made an assignment for the benefit of his creditors. The action of Campbell Construction Company v. T. J. Williamson, which had been pending since October 20, 1926, was consolidated with the action of Williamson's Receiver v. Commonwealth Life Insurance Company. Later, the Campbell Construction Company filed an amended petition asking that the city of Pikeville be made a party. In this amended petition it alleged that, at the time of the levy of the assessment against the lots on Julius avenue owned by T. J. Williamson, the assessment was in excess of 50 per cent. of the value of such lots, and that by reason thereof the city of Pikeville was liable for the assessment against each of the lots, and judgment against the city in the sum of $4,055.84 was prayed. A demurrer to the amended petition was sustained, and thereafter, on August 15, 1933, another amended petition containing substantially the same averments was filed. On December 15, 1934, a demurrer to the second amended petition was sustained. The order sustaining the demurrer reads as follows:

"This consolidated cause having been submitted.

on general demurrer to plaintiff's amended petition as amended against the city of Pikeville, and the court upon consideration sustains said demurrer to the ruling of the court in so doing the plaintiff objects and excepts and the plaintiff refusing to plead further the said amended petition as amended is dismissed and the averments therein are held for naught in so far as the city of Pikeville is concerned, to all of which the plaintiff objects and excepts and prays an appeal to the Court of Appeals of Kentucky, which is granted.''

On March 28, 1935, another amended petition was filed by the Campbell Construction Company, in which it sought to recover from the city of Pikeville not only on the assessment against T. J. Williamson, but on all the street improvement bonds delivered to it in settlement for the construction work completed in 1925. It asked that the city of Pikeville be summoned, and that it recover from the city the sum of $8,824.42. In an order entered on the same day, it was recited that the amended petition asking that the city of Pikeville be made a party defendant had been lost, and that a copy tendered by the plaintiff was then ordered substituted and filed in lieu of the original. No further orders in regard to this amended petition appear, and it must be assumed that it was a copy of the amended petition to which a demurrer had theretofore been sustained.

On May 12, 1932, the Campbell Construction Company filed the following motion: ''Comes the plaintiff Campbell Construction Company and moves the court to direct the master commissioner of this court to resell the lots designated in the judgment herein, the purchaser and his bondsman being insolvent and the sale bonds not being collectible.'' The court sustained the motion, and ordered the lots of T. J. Williamson resold upon the terms and in the manner provided in the original judgment, and directed the master commissioner to carry out that judgment. The lots were sold separately by the commissioner. Some of the lots sold for more than the assessments against them, and others for less.

On March 27, 1935, a judgment was entered in the Consolidated case overruling the motion of the Campbell Construction Company to adjudge its claim for

street improvements a preferred claim against the estate and assets of T. J. Williamson. It was further adjudged that the judgment rendered on December 10, 1926, in the case of Campbell Construction Company v. T. J. Williamson, only gave the plaintiff therein a lien upon each lot mentioned therein for the street improvement assessment against such lot, and not a lien upon the lots as a whole or upon the proceeds arising from the sale of the lots as a whole. Its motion that its claim be allowed as a common claim against the estate of T. J. Williamson was also overruled. It is from that judgment that the Campbell Construction Company has appealed.

Appellant's contention that the city of Pikeville is liable for the unpaid assessment on the Williamson property is based on the fact that the assessment was, at the time of its levy, in excess of 50 per cent. of the value of the lots fronting on the improved street. It is also claimed the city is liable by reason of its failure to collect the assessments and pay them to appellant. While a considerable portion of appellant's brief is devoted to these questions, we do not find that an appeal has been taken from the judgment of December 14, 1934, sustaining a demurrer to the amended petition in which it was sought to make the city a party, and upon the failure of the plaintiff to plead further dismissing its amended petition. Waiving that queston, however, the ruling of the circuit court was correct.

Section 3563 of the Kentucky Statutes provides that any assessment for any street improvement which exceeds one-half of the value of the lots, or parcels of real estate, upon which the assessment is made, shall be void as to such excess, and the board of council shall provide for the payment of any such excess out of the general fund. T. J. Williamson, however, exercised the option extended to property owners by section 3575 to pay the assessments in ten annual installments, and entered into an agreement in writing with the city that in consideration of such privilege he would make no objection to any illegality or irregularity with regard to the taxes against his property. Section 3575 provides that any property owner entering into such an agreement, or who exercises the option to pay in installments, shall be concluded thereby and shall not be per-

mitted to set up any defense whatever against the payment of the assessment. A property owner who elects to pay on the installment plan and agrees in writing that he will make no objection to any illegality or irregularity with regard to the assessment against his property waives the defense that the assessment is in excess of one-half the value of the property, and the lien is valid and binding to the extent of the full value of the property. Security Trust Co. v. Louisville Title Co., 259 Ky. 849, 83 S. W. (2d) 481; Hargis v. W. T. Congleton Co., 252 Ky. 192, 66 S. W. (2d) 98; Herbert C. Heller & Co. v. Hunt Forbes Construction Co., 223 Ky. 168, 3 S. W. (2d) 206.

It was not alleged in either of the amended petitions that the city had failed in any respect to take the steps required to make the assessment valid. It was alleged that it had failed to collect the installments when due, but section 3575 of the Statutes provides that the owner of any street improvement bonds "shall have the right to proceed in any court of competent jurisdiction to foreclose the lien for such unpaid assessments." The appellant, in less than six months after the property owner had defaulted in the payment of interest on the bonds, exercised its option to have all unpaid installments declared due and payable, and obtained a judgment for the full amount of the bonds with interest and costs. The property was sold for an amount sufficient to pay the judgment, and a sale bond was executed. Under these circumstances, the city was under no duty to take steps to collect the assessments. City of Irvine v. Wallace, 254 Ky. 564, 71 S. W. (2d) 974.

The contention that appellant is entiled to a lien on the entire proceeds from the sale of the lots is based on the theory that the judgment of December 10, 1926, adjudged such a lien. That is not the effect of the judgment. The lots and the amounts assessed against them were set out separately in the judgment, and a lien was adjudged against each lot for the specific amount assessed against it. It is true the judgment contained this: "It is further adjudged by the court that the said above-described parcels of real estate cannot be divided without materially impairing the value of same and that same be sold by the commissioner of this court, or a sufficiency thereof, to satisfy plaintiff's

debts." They were offered separately and then as a whole, and were sold as a whole to D. C. Williamson, son of T. J. Williamson. Whether or not it was proper to sell them as a whole is not material. Each lot had been separately assessed, and was only liable for the assessment against it. It appears from the descriptions that all of the lots were not contiguous. The court clearly did not intend to adjudge that the lots as a whole were indivisible, but only that each lot was indivisible. That being true, when they were resold under the judgment of December 10, 1926, each lot was in lien only for the amount of the assessment against it.

Under the judgment the appellant received all of the proceeds if a lot sold for less than the assessment against it, and if it sold for more the lien against that particular lot was satisfied in full. Appellant was not entitled to have the excess applied to deficiencies on other lots, nor was it entitled to have applied on its judgment money belonging to the estate of T. J. Williamson derived from other sources. Appellant abandoned any claim it may have had by virtue of the sale bond executed by D. C. Williamson with T. J. Williamson as surety, and on its own motion was relegated to its rights under the judgment of December 10, 1926. The election by the owner of the lots to pay on the 10-year installment plan, and the waiver of irregularities by him, did not bind him personally to pay the assessments and did not make the combined lots liable for the combined assessments. Such waiver created no additional right of action. City of Middlesboro v. Terrell, 259 Ky. 47, 81 S. W. 865; City of Mount Sterling v. Bishop, 228 Ky. 529, 15 S. W. (2d) 416.

The judgment is affirmed.