## City of Mayfield v. Carey-Reed Co. et al.

(Decided June 11, 1935.)

R. E. JOHNSTON and AUBREY HESTER for appellant.

J. C. SPEIGHT and NUNN & WALLER for appellee Cary-Reed Co.

J. E. WARREN for other appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellee, Carey-Reed Company, brought this action against the city of Mayfield to recover $4,679.77 alleged to be due for street and sidewalk construction work done on the "Paducah road" from Maple street to the north limits of the city, a distance of 400 or 500 feet.

In 1925 the city initiated an ambitious program for the construction of streets and sidewalks, and during the succeeding two years contracts in the aggregate amount of nearly $1,000,000 were let. Carey-Reed Company was the successful bidder for practically all of the work, and the last contract under the original program was completed early in the year 1927. In January, 1927, Carey-Reed Company approached the city council with a proposition to pave the Paducah road from the end of the first construction at the north line of Maple avenue north to the city limits. The company proposed to pave this section of street with amesite and to furnish the material f. o. b. cars at the mine, the city to pay only the freight and the cost of laying the material. It was represented to the city that amesite was a new type of road-building material which Carey-Reed Company was anxious to introduce, since it was the owner of mines producing the material, and for that reason it was willing to furnish it free of cost to the city at the mines.

In order to enable the city to levy an assessment against the property abutting on this section of street to pay the cost of construction, an ordinance was adopted providing for the original construction of the street. Various materials which might be used, including amesite, were named in the ordinance, and it also provided for grading the street and for the construction of a concrete curb and gutter and sidewalks where necessary.

The bid of Carey-Reed Company for paving the street with amesite on a gravel base was the only one submitted and was accepted. The contract was entered into on March 21, 1927, and provided that the work should be completed on or before June 1, 1927.

The work was completed on May 25, 1927, and on the same day the city engineer made an estimate of the materials furnished and labor performed, and certified these facts to the city and to the contractor. The engineer certified that the amount due under the contract was $4,679.77.

After receipt of the city engineer's estimate of the total cost of the improvement, the city gave the notice prescribed by section 3573 of the Statutes to the property owners, who at once protested in writing against the acceptance of the improvement. It was their contention that the work had not been performed in accordance with the contract and that there were defects both in materials and workmanship. There was considerable bickering back and forth, and Carey-Reed Company made certain repairs to the street which had just been completed. In November, 1927, the street committee reported that the work had not been performed in compliance with the contract, and on November 28, 1927, the city council approved the report and formally rejected the work. Nothing further was done until October 24, 1932, when Carey-Reed Company brought this action against the city to recover the amount alleged to be due under the contract and asking that the city be required to assess the property abutting the improvement as required by law.

On December 9, 1932, the city filed a pleading styled answer, set-off, counterclaim, and cross-petition, in which it set out the proceedings leading up to the letting of the contract for the improvement of Paducah road and alleging that the work was not done in a workmanlike manner or with proper materials, and that the street was practically impassable from the time the work was completed. In the prayer the city asked that the plaintiff's petition be dismissed, but, if that was not done, that the property owners be made parties defendant, and that the plaintiff, if granted any recovery, only be allowed to recover for so much of the work as complied with the contract, and that no per-

sonal judgment be rendered against the city, but that it only be required to assess the property for a sufficient amount to pay any demand that might be adjudged to the plaintiff. No summons on the cross-petition was issued until December 27, 1933. The property owners answered on March 12, 1934, denying that the work had been done in compliance with the contract and pleading the five-year statute of limitations. Appropriate pleadings completed the issues, and proof having been heard, the court entered a judgment in favor of the Carey-Reed Company against the city for the sum of $2,290.58, with interest thereon from October 24, 1932, and dismissing the city's cross-petition against the property owners. The city has appealed, and the Carey-Reed Company has been granted a cross-appeal.

A number of witnesses testified that holes appeared in the pavement immediately after the work was completed and that the street rapidly disintegrated and in a short time became practically impassable. There was little evidence to the contrary.

About eighteen months or two years after the work was rejected the city entered into a contract with the state highway commission which provided for the construction of what is known as a retread type of road on the section of street in question. The city paid $2,000 to the state highway commission, and the commission constructed the road in accordance with the contract, using the grades that had been established when the amesite paving was done. All of the evidence shows that the concrete curb and gutter and sidewalks were constructed by Carey-Reed Company in the proper manner and that the excavation was done in accordance with the specifications.

The chancellor allowed the full amount claimed for constructing the curb and gutter, concrete sidewalks, and storm sewers and for other items which the evidence showed were properly constructed and of permanent value, regardless of the type of street paving. The amount claimed for 631 cubic yards of excavation was $283.95, and he allowed $200 on this claim, apparently upon the theory that it was worth that amount when the street was reconstructed later. He disallowed $1,977.75, the amount claimed for laying the amesite paving and gravel base, and also two or three small items

aggregating approximately $250. The city received the benefit of certain portions of the work which complied with the contract and which was utilized when the street was repaved. The evidence supports the chancellor's finding in this respect.

The city insists that it should be permitted to assess against the abutting property the amount found against it, but we think the chancellor was correct in adjudging that its right to make the assessments was barred by limitations. Section 3574 of the Statutes provides that:

"Upon receipt of the engineer's estimate and the report of the street committee, as provided in the preceding section, the board of council shall carefully consider and investigate any protests which may have been filed against the acceptance of the work or the confirmation of the engineer's estimate of the cost thereof, and shall hear any competent and proper evidence which may be offered thereon prior to the acceptance of the work and confirmation of the estimate, and the board of council may then accept the work and confirm the engineer's estimate of the cost thereof, or, if it be of the opinion that the work had not been done in accordance with the contract, or that the engineer's estimate of the cost is incorrect, it may require the contractor to perfect or complete the work in accordance with the contract, or it may modify the estimate of the cost of the work to conform to the facts, or both."

Under this section of the Statutes, the board of council, if it is of the opinion that the work has not been done in accordance with the contract, may require the contractors to complete the work in accordance with the contract, or it may modify the estimate of the cost of the work to conform to the facts. When it has modified the estimate of the cost of the work, it may apportion the cost equally among the owners of the abutting property according to the number of abutting feet owned by them respectively.

In the instant case the board of council arbitrarily rejected the work and treated the entire improvement as worthless. Under the circumstances, it was its duty, in order to preserve its right to assess the cost of the improvements against abutting property, to modify the

estimate of the cost to conform to the facts within a reasonable time. This it failed to do and, more than six years having elapsed before any steps were taken to hold the property owners liable for the cost of the work, the five-year statute of limitations applies as to them, and, having failed to assess the cost of the improvements on the abutting property, it is liable to the contractor. City of Providence v. Southern Roads Co., 244 Ky. 346, 50 S. W. (2d) 931; City of Covington v. McKenna, 242 Ky. 452, 46 S. W. (2d) 760; City of Earlington v. Powell, 226 Ky. 353, 10 S. W. (2d) 1060.

The judgment is affirmed both on the original and cross appeal.