## City of Catlettsburg v. Citizens' National Bank of Ironton, Ohio.

(Decided April 29, 1930.)

GEO. F. GALLUP for appellant.

GEO. B. MARTIN, JOHN L. SMITH and A. R. JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The Citizens' National Bank of Ironton, Ohio, brought this action against the city of Catlettsburg, a city of the fourth class, to recover on six street improvement bonds of $500 each, together with interest thereon from July 1, 1924. The demurrer to the petition having been overruled, and the city having declined to plead further, judgment was rendered in accordance with the prayer of the petition. The city appeals.

The statutes in force at the time the bonds were issued will be found in Kentucky Statutes 1915. By section 3567 it is provided that a lien shall exist for the cost of the original improvement of the public ways, against the respective lots or parts of lots fronting or abutting on the improvement, and that, ''if such improvements be made as provided by ordinance, in no event shall the city be liable therefor without the right to enforce it against the property receiving the benefit thereof.'' By section 3572 it is provided that the original construction of any street, etc., may be improved by grading, macadamizing, paving with brick, etc., at the exclusive cost of the owners of lots and parts of lots or land fronting or abutting or bordering on the grounds so improved, to be equally apportioned by the board of council according to the number of front feet owned by them respectively upon petition of the majority of the property owners or without

petition upon the concurrence of two-thirds of the members elect of the general council at a regular meeting. By section 3573 it is provided that, upon the completion of the work and the apportionment of the cost, any property owner may settle in cash for the amount of his apportionment, and that the city collector or treasurer should place the money in the "street improvement fund." It further provided that at the expiration of 30 days after the adoption of the apportionment the collector or treasurer shall report to the council the amount of cash received, and the council shall order the city clerk to advertise street improvement bonds for sale to cover the remainder, together with all expense attending the issue and sale of said bonds, including the advertisement, cost of printing bonds, etc., and that, when the bonds shall have been sold, the money realized therefrom shall be placed in the "street improvement fund," and an order drawn against said fund in favor of the contractor for the entire amount due him, including interest at the rate of 6 per cent. per annum from the time the work was accepted by the city council to date of payment made to him. By section 3574 it is provided that, within 30 days after the advertisement for sale of street improvement bonds, it shall be the duty of the mayor to issue the bonds of the city which shall be signed by the mayor and city clerk with coupons payable semi-annually at the rate of interest specified in said bonds. It is further provided that said bonds shall be issued in such denomination as may be specified and shall be redeemable by the city at any time within 10 years after the date of issue that council may ordain. It is also provided that the bonds shall be payable at any bank or banks in the state of Kentucky as the council may direct. By section 3575 it is provided that all money arising from the sale of bonds shall be kept by the city treasurer in a separate fund to be known as the "street improvement fund," and the city treasurer shall pay out of said fund all orders which the city council shall direct paid for any street improvement provided for in section 3572. It is also provided that the assessment shall be made just as soon as the improvement is fully completed, and that "the first installment, together with interest on the whole amount at rate specified, shall be payable at the first payment of taxes next succeeding the time the assessment is placed upon the tax list," and the other install-

ments annually thereafter shall be payable at the time of the payment of other city taxes. There was also the following provision: "The assessment may be collected like other taxes, or the city may, at any time, after one installment remains delinquent for thirty days, by suit in equity, enforce its lien for all of the unpaid installments, with interest thereon to date of satisfaction of same, and its cost expended." There is an additional provision that the city council may provide a sinking fund to meet any deficit that may occur in the "street improvement fund" by reason of property owners not paying their assessments when due, and any money remaining in said sinking fund, of which may not be needed for the purpose it was created, may be transferred to the general fund. By section 3577 it is provided that "all money received from the assessment herein provided for shall be appropriated upon the order of the council upon the city treasurer, to the payment of the interest and to the redemption of the bonds which may be issued for the improvements herein provided for."

Briefly stated, the allegations of paragraph 1 of the petition are these: By a vote of two-thirds of the members-elect of the council at the regular meeting held in April, 1911, the board of council adopted an ordinance ordering the improvement of certain parts of certain streets by original construction at the exclusive cost of the property owners. The contract was let to the lowest bidder, who performed the work in accordance with the plans and specifications provided by the board of council. On its completion the improvement was accepted by the council, and the cost was apportioned against the abutting property owners. The total cost was $18,612.89. Of this sum $6,893.13 was paid in cash, and bonds for the remaining amount of $12,732.12 were issued by the city. The bonds were advertised for sale and sold to the highest bidder. The bonds were then signed, sealed, and executed and delivered by the mayor to the purchaser. The bonds were then put in circulation, and the six bonds in question for $500 each were purchased by plaintiff. Omitting the immaterial portions, each of the bonds reads as follows:

"Know all men by these presents, that the City of Catlettsburg, in the State of Kentucky, promises to pay to the bearer the sum of Five Hundred Dollars ($500.00), on the First day of January, Nineteen Hundred and twenty-two, at the Kentucky

National Bank, Catlettsburg, Kentucky, with interest thereon at the rate of six per cent per annum from date hereof until payment of said principal sum, upon the presentation and surrender of the proper coupons hereto annexed, at said Kentucky National Bank, of Catlettsburg, Kentucky, for the payment of which said sum and interest the faith and credit of the City of Catlettsburg is hereby held and firmly bound to make, but out only of the sums realized upon the apportionments against said property and lots abutting streets to be improved, under and pursuant to ordinance of the Board of Council of the City of Catlettsburg, adopted the Third day of April, Nineteen Hundred and Eleven, after the said sum shall have been collected and paid to the Treasurer of the said City; neither said amount, nor said interest, shall be payable and redeemable on the faith and credit of the City, nor shall principal or interest be deemed a debt against the City, but shall be payable out of and secured by a lien on the assessments to be made and apportioned by said City against said lots and parts of lots or lands abutting upon streets or parts of streets in said ordinance ordered to be paved and curbed. The principal sum of this bond shall be payable at maturity upon presentation and surrender of the same at said Kentucky National Bank, Catlettsburg, Kentucky.

"The right is reserved to redeem this bond at the option of the City of Catlettsburg, Kentucky, on the First day of January, Nineteen Hundred and Thirteen, or on the First day of January of any year thereafter, by paying par thereof and all interest upon coupons due on the date of redemption of same."

The city has failed and refused to pay each and all of the said bonds. and has failed and refused to pay any of the interest thereon, except the interest accruing to and including July 1, 1924.

Paragraph 2 is, in substance, as follows: All the bonds of the par value of $12,732.12 were sold at the same time and were of the same tenor and effect. The improvement fund was a trust fund collected by the city for the equal and ratable payment of each and all of said bonds without preference in payment of any one over the other.

The city collected assessments against the abutting property, aggregating the sum of $14,159.69. All of this money, except the interest on the bonds held by plaintiff to July 1, 1924, was applied to the payment of other outstanding bonds of said series, and all of said bonds, except those held by plaintiff, were in that way fully paid and discharged. Plaintiff was the owner and holder of 23 5/10 of the $14,159.59, or $3,317.18, whereas it received only $2,250, or $1,067.18 less than it should have received had the proceeds of the paving assessments been paid ratably to the bondholders in proportion to their respective holdings. By reason of its breach of duty the defendant was indebted to plaintiff in the sum of $1,067.18.

The allegations of paragraph 3 are these: By the terms of the ordinance and of the bonds the city under took and agreed that said bonds should be payable out of and secured by lien on the assessments which were made and apportioned against the abutting property, and undertook as agent and trustee for the owners and holders of said bonds to exercise due diligence in the collection of the apportionments and assessments against said property, and in the payment thereof to the bondholders, and it was its duty to use legal means to coerce the payment of said assessments when necessary. Instead of performing its duty the city negligently failed to bring suit for the enforcement of three assessments, one for $508.89, against C. E. Silcott, one for $89.04 against Frank Pratt, and a third for $65 against Mac Childers, until after the claims and liens by which they were secured were barred by limitation. By reason of said negligence plaintiff has been damaged in said sum.

In addition to other instances not necessary to be mentioned, we have ruled that a municipal corporation authorized to contract for street improvements and not prohibited from paying for them is liable, though the contract provided that improvements should be made at the cost of abutting property, where the corporation having authority so to do fails to take the proper steps to make the property liable to an assessment for the costs. Cohen v. City of Henderson, 182 Ky. 658, 207 S. W. 4. This is not a case where the bonds were secured by a lien on specific property with right of action in the bondholder, and the statute provided that the bondholder should look alone to the lien, and in no event should the city be liable.

Nor is it a case where the city was prohibited from ordering the improvement at its own expense. On the contrary, the statute provides that "any city may provide by ordinance that such original construction shall be paid by the city, either in whole or in part," section 3564, Kentucky Statutes 1915; and though it is further provided that "in no event shall the city be liable therefor without the right to enforce it (lien) against the property receiving the benefit thereof," section 3567, Kentucky Statutes 1915, that provision does not stand in the way, since the city of Catlettsburg had the right to enforce the improvement lien against the benefited property. The case is one where the statute provided for the issue of the bonds of the city itself to the amount of the unpaid assessment, together with the cost of advertising the bonds for sale, printing and engraving the bonds, and all other expenses attending the issue of same, with positive directions that the total amount thereof should be assessed equally by the front feet upon the property fronting, abutting, or bordering on the improvement. The statute further authorized the city in case of delinquency to enforce the collection of the assessments by suit in equity. Though the faith and credit of the city were not pledged absolutely, each of the bonds provided "for the payment of which said sum and interest the faith and credit of the City of Catlettsburg is hereby held and firmly bound to make, but out only of the sums realized upon the apportionments against said property and lots abutting streets to be improved," etc. Thus the case is one where the city was under the legal duty to take the necessary steps to make and collect the assessments and distribute the proceeds ratably among all the bondholders. By reason of the city's failure to make a sufficient assessment, and by reason of its failure to make an equal distribution of the proceeds of the assessment from all the bondholders, and its further failure to enforce further assessments before they were barred by limitation, there is no money in the "street improvement fund" with which to discharge the bonds in question. In short, the case is one where the city failed to take the steps necessary to make the abutting property liable, and to enforce such liability. In the circumstances we conclude that there was such a breach of duty on the part of the city as to make it liable on the bonds in question. In the case of United States ex rel. Concord Sav. Bank v. Fort Scott, 99 U. S. 152, 25 L. Ed.

348, the United States Supreme Court held the city liable on improvement bonds issued pursuant to statutes, and under circumstances substantially like those involved in this case.

Judgment affirmed.