## City of Covington v. McKenna.
(Decided February 16, 1932.)

SAMUEL W. ADAMS, City Solicitor, and RALPH P. RICH, Assistant City Solicitor, for appellant.

ELMER P. WARE and ORIE S. WARE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This appeal by the city of Covington challenges the regularity of the proceedings resulting in a judgment in favor of appellee for the sum of $5,781.64, together with interest and costs.

The facts are these: On March 10, 1927, the board of commissioners of the city of Covington passed an ordinance ordering the original construction of a portion of Highland avenue. After due advertisement the bid of E. J. McKenna was accepted on April 11, 1927, and McKenna entered into a contract with the city to perform all the work and labor necessary to construct and finish in every respect in the most substantial and workmanlike manner the work ordered to be done. The work was completed on August 25, 1927, and the street was opened for travel by order of the commissioner of public works on September 10, 1927, and has been so used since that time. Upon the completion of the work the city engineer made a full and correct estimate of the total cost of the improvement based upon the amount of work done and materials furnished under the contract showing that there was due the contractor for said work and materials the sum of $5,781.64. At the time of the completion of the work there were some protests by the property owners, but no official action was taken. The board of commissioners never assessed the cost of the improvement on the abutting property. On May 9, 1929, and after this suit was brought, the commissioner of public works filed with the commissioners a writing recommending that the

street be rejected, and on June 20, 1929, the commissioners passed a resolution refusing to accept the street.

This action was brought by the contractor to recover of the city on the ground that the city never took the necessary steps to assess the cost of the improvement on the abutting property. The petition set forth the proceedings leading up to the execution of the contract, and alleged facts showing the completion of the contract in accordance with its terms. In addition to denying certain allegations of the petition, and alleging that the property owners protested against the acceptance of the work on the ground that it was done in an unsubstantial and unworkmanlike manner, the answer contained the following allegation:

"That thereafter the Commissioner of Public Works recommended to the Board of Commissioners of the City of Covington that said work be rejected, and thereupon the Board of Commissioners approved said recommendation and rejected said work because the same was done in a faulty, unsubstantial and unworkmanlike manner, and not in accordance with the terms and conditions of said contract, and thereupon the plaintiff was notified of the action of the Board of Commissioners with respect to said work; that under the statutes in such cases made and provided, the determination by said Board of Commissioners, that the work had not been done in accordance with the contract, is conclusive and binding on plaintiff contractor, and is not subject to question or contest in any court. The defendant therefore states that it is not liable to the plaintiff, because of his failure to comply with the terms and conditions of his contract in making said improvement."

On motion of appellee the foregoing allegations were stricken from the answer. The city then introduced as a witness W. W. Stewart, former city engineer, who offered to testify as to the specifications for the construction of the concrete street, without producing the specifications, or the ordinance setting forth the specifications, and the court declined to let him testify. W. E. Blackburn, former commissioner of public works, testified that he ordered the street opened on the 19th day after its completion, although it should not have been opened for 21 days thereafter, and that there were a few breaks in

the street within approximately one month after completion. The city then offered to introduce the testimony of G. E. Weingardner, who had made some tests as to the thickness of the concrete as shown by a few cores removed from the street. The court refused to permit him to testify on the ground that the contract did not specify the thickness of the concrete, and that no such issue was tendered by the answer. At the conclusion of the evidence, the court directed the jury to return a verdict in favor of appellee.

It long has been the rule in this state that a municipality failing to take steps necessary to collect assessments for authorized street improvements may become liable therefor, though contract provided for improvement at cost of abutting property. Kearney v. City of Covington, 1 Metc. 339; City of Catlettsburg v. Citizens' National Bank, 234 Ky. 120, 27 S. W. (2d) 662. To obtain relief the contractor may proceed directly against the city for damages measured by the contract price, Kearney v. City of Covington, supra, or he may ask a mandamus or mandatory injunction requiring the council or board of commissioners to proceed to assess the cost of the improvement in accordance with the statute (Ky. Stats., sec. 3096). City of Earlington v. Powell, 226 Ky. 353, 10 S. W. (2d) 1060, 1062.

The main contention of the city is that under section 3100, Kentucky Statutes, the rejection of the work by the commissioners was conclusive in the absence of fraud or collusion, and that the court erred in striking the quoted part of its answer. Section 3100, Kentucky Statutes, in so far as applicable, reads as follows: "Upon receipt of the engineer's estimate and the report of the board of public works, as provided in the preceding section, the general council shall carefully consider and investigate, by its committees, or otherwise, any protests which may have been filed against the acceptance of the work or the confirmation of the engineer's estimate of the cost thereof, and shall hear, or cause to be heard by its appropriate committee and reported to it in substance, any competent and proper evidence which may be offered thereon prior to the acceptance of the work and confirmation of the estimate, and the general council may then accept the work and confirm the engineer's estimate of the cost thereof, or, if it be of opinion that the work has not been done in accordance with the contract, or that the engineer's estimate of the cost is incor-

rect, it may require the contractor to perfect or complete the work in accordance with the contract, or it may modify the estimate of the cost of the work to conform to the facts, or both. The determination of the general council shall be conclusive and binding on all parties, and shall not be questioned or contested in any court, except on the ground of fraud or collusion on the part of the general council.''

The precise question was before the court in City of Earlington v. Powell, supra, where the Court had under consideration section 3574, Kentucky Statutes, which is substantially the same as section 3100. In dealing with the same contention in that case we said:

> ''It is argued that the statute confers upon the council the exclusive function of deciding when an improvement contract has been · performed or breached, and that the discretion thus vested is beyond the control of the courts, in the absence of fraud or collusion, as is true in the present case. We have often held that the acceptance of the work by the city council is final, unless fraud or collusion is found. Lovelace v. Little, 147 Ky. 137, 143 S. W. 1031; Town of Russell v. Whitt, 161 Ky. 187, 170 S. W. 609; Creekmore v. Central Const. Co., 157 Ky. 336, 163 S. W. 194; Henderson v. Carey-Reed Co., 180 Ky. 450, 202 S. W. 882; City of Maysville v. Davis, 166 Ky. 566, 179 S. W. 463.
>
> ''But the statute does not empower the council to reject work of substantial value for mere defects or insufficiencies not amounting to a total failure to perform the contract. It plainly contemplates that the council may require specific defects to be remedied, and insufficiencies supplied, or it may modify the cost to conform to the facts, or it may do both, if the exigencies demand it. If the statute should be construed to authorize one party to a construction contract to reject the work entirely and make its action conclusive, it would place arbitrary power in the hands of that party. A construction leading to such consequences should, if reasonably possible, be avoided, since the Constitution declares that:
>
> '' 'Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority.' Section 2.

"The language of the statute does not compel such construction. Its purpose and provisions plainly require the interpretation that the council may compel the contractor to correct the defects, or it may reduce the cost of the work to conform to its fair value, as measured by the contract. It may also cause the contractor to correct the defects in part, and modify the estimate of cost as to other parts, if its discretion should so dictate. It is such action by the council that is contemplated by the provision in the statute that:

" 'The determination of the board of council shall be conclusive and binding on all parties and shall not be questioned or contested in any court, except on the ground of fraud or collusion on the part of the council.'

"When such a case is presented to the council, it is under a plain duty to proceed in the manner pointed out, and may not arbitrarily reject the entire estimate. It must act with due regard to the rights of the contractor, as well as those of the abutting owners."

In this case the board of commissioners did not follow the statute and require the contractor to perfect or complete the work in accordance with the contract. Nor did it modify the estimate of the cost of the work to conform to the facts. On the contrary, it arbitrarily rejected the work, and such rejection was not a defense to this action.

The further contention is made that the court erred in not permitting counsel in his opening statement to give a statement of the facts. The difficulty with this contention is that the facts which he proposed to state were those leading up to, and accompanying, the rejection of the work, which rejection, as we have seen, furnished no defense to the action.

It also follows that the court did not err in refusing the offered evidence tending to show why the board of commissioners rejected the work.

As appellee's evidence showed a full compliance with the contract, and there was no evidence of substance to the contrary, the court did not err in directing a verdict for appellee.

Judgment affirmed.