(April Term, 1936)

---

## HENNING v. CITY OF CASPER

(No. 1905; June 12, 1936; 57 Pac. (2d) 1264)

(Rehearing denied November 24, 1936. See 62 Pac. (2d) 304)

2

4

For the appellant, there were briefs by *R. R. Rose* and *L. H. Sennett* of Casper and oral argument by *Messrs. Rose* and *Sennett*.

6

For the respondent, there was a brief by *Hagens & Wehrli* and *E. E. Murane* of Casper, and oral argument by *Mr. Wm. J. Wehrli.*

*R. R. Rose* and *L. H. Sennett* in reply.

BLUME, Justice.

This is an action brought by W. F. Henning, hereinafter named plaintiff, against the City of Casper, a municipal corporation, hereinafter generally called the city, to recover from the defendant a personal judgment for the sum of $80,760.55 and interest, due by reason of certain improvement bonds issued to him by the city and unpaid. The city filed a demurrer to the second amended causes of action, which was sustained, and from a judgment thereon the plaintiff has appealed.

The plaintiff, setting out six different causes of action, alleges that he is the owner of bonds in six different sanitary sewer districts of the City of Casper, a city of the first class; that he bought these bonds, some on April 1, 1921 and some on April 14, 1922. Copies of the various bonds issued to him are set out. They are substantially of the same tenor, except only as to number of bond, number of sewer district, and that some of them recite that they are issued according

to the provisions of Chapter 121, Comp. Stat. 1910, which relates to cities of the first class, while others recite that they are issued under the provisions of Chapter 120 of the Session Laws of Wyoming, 1915. With these exceptions, and leaving out the closing clause, certificate and signatures, a copy of the bonds is substantially as follows:

"UNITED STATES OF AMERICA
STATE OF WYOMING
COUNTY OF NATRONA
CITY OF CASPER.

SANITARY SEWER IMPROVEMENT BOND

Sanitary Sewer District No.............

No............                                    $500.00

The City of Casper, in the County of Natrona, in the State of Wyoming, for value received, hereby promises to pay to the bearer the sum of.

FIVE HUNDRED DOLLARS ($500.00),

on or before the Twelfth Day of January, A. D. 1932, with interest thereon at the rate of Six (6) Per Cent per Annum, payable semi-annually on the Twelfth Days of January and July of each year, to the bearer of the respective coupons therefor as they mature, both principal and interest being payable in United States gold coin of the present standard value at the office of the City Treasurer of Casper, Wyoming.

This bond is one of a series issued for the payment of the cost and expense of improvements in Sanitary Sewer District No............. in said City, as authorized by Ordinance No. 238-A passed and approved December 5th, A. D. 1921, under and pursuant to the provisions of Chapter 120 of the Session Laws of Wyoming, 1915, and amendments thereto, and is payable only out of the local improvement fund created for the payment of the cost and expense of such improvement, and not otherwise, and in conformity with said Act it is hereby recited that:

'Neither the holder nor owner of any bond under the authority of this Act shall have any claim therefor

against the city by which the same is issued, except from the special assessment made for the improvement for which such bond was issued, but his remedy in case of non-payment shall be confined to the enforcement of such assessments.'

This bond may be called in and paid in its numerical order on any interest payment date whenever there shall be sufficient money in the local improvement fund against which these bonds are issued, over and above sufficient for the payment of interest on all unpaid bonds to pay the principal of any one or more bonds, provided such call shall be made in the City official newspaper as by law required.

When, by reason of non-conformity to any law or ordinance, or by reason of any omission, informality, mistake, error, delay or irregularity, any tax or assessment levied on account of said improvement is invalid or is deemed invalid by the Council of said City, or is adjudged illegal or in case of deficiencies, the Council of said City will correct the same by proper proceedings as provided by law and will re-assess and re-levy the same, and also an amount necessary to make up such deficiencies.

And it is hereby certified, recited and declared that all acts, conditions and things required to be done precedent to and in issuing of this bond have been done, happened and performed in regular and due form as required by law and that said indebtedness evidenced by this issue of bonds does not exceed any statutory or constitutional limitation."

The second amended petition further discloses that certain amounts of the principal and interest were paid on these bonds until some time in 1931 on some of the bonds, and until some time in 1932 on others, but that since these dates no part of the principal and interest due on the respective bonds has been paid; that suits were filed by plaintiff in the District Court of Natrona County, Wyoming, one on August 15, 1931, two on January 16, 1932, and others on May 20, 1927, in which the abutting property owners involved and

against whom assessments for local improvements had been made, were made defendants, the purpose of the actions being to foreclose the liens securing the bonds of the sanitary sewer districts issued to the plaintiff; that judgments were thereafter entered in said causes, some on November 9, 1932 and some on January 20, 1933; that it was finally adjudged by the court and plaintiff alleges the fact to be that in the creation of the sanitary sewer districts and in the matters preliminary to the assessments, the city followed the procedure provided by Chapter 120 of the Session Laws of Wyoming, 1915, but that in apportioning the assessments for the expenses of the sewer, the city followed the provisions of Section 1, Chapter 56, Session Laws of 1917; that neither the City of Casper nor the officers thereof had any power or authority under the provisions of Chapter 120, supra, to levy assessments for said sewer construction or to issue bonds or to sell the same in payment therefor, and that the said bonds and the aforesaid assessments were and are and each of them was and is illegal and void, under the laws of the State of Wyoming; that after the institution of the cases aforesaid and prior to the rendition of the judgments therein, the plaintiff duly and timely notified the city of the pendency of the actions and requested it to appear and defend the validity of the assessments liens and bonds above mentioned, and that the city would be held liable if the court should declare the assessment liens and bonds to be illegal and invalid, but that the city refused, failed and neglected to appear or to participate in said actions in any manner; that plaintiff has duly presented his claim to the city and that it was disallowed; that the indebtedness of the defendant created by the transactions herein set out did not at the time, and the indebtedness now remaining unpaid does not exceed, together with all other indebtedness of the defendant, any statutory or

constitutional limitation, and was and is within the legal debt limit of the defendant. Plaintiff accordingly asked judgment as for money had and received. In separate causes of action plaintiff alleged that the amounts of money received by the city on account of the bonds above mentioned was a loan made to the city, and he asked to recover this loan. In other causes of action he alleged that the defendant represented to the plaintiff that it was about to issue and offer for sale certain sanitary sewer special improvement bonds and that all acts, conditions and things required to be done in connection therewith had been done and performed; that plaintiff believed these representations to be true, but that they were false and untrue and known to defendant to be false and untrue, and he accordingly asked judgment upon that theory.

It will be noted that there is a discrepancy between the allegations of the petition and the copy of some of the bonds, in that some of the latter recite that they are issued under Ch. 121, Comp. Stat. 1910, whereas the petition alleges that they were all issued under the so-called 1915 law. The point, however, is not material, and counsel for plaintiff have made their argument in this court as though the recitals in the bonds were correct. Chapter 121, supra, relates to cities of the first class, as is the City of Casper, and is contained in sections 1781 to 1930, Wyo. Comp. Stat. 1920. The law of 1915 was passed specifically for the making of local improvements and is contained in sections 1966 to 2040, Comp. Stat. 1920. Inasmuch as the bonds were issued in 1921 or 1922, the statutes of 1920 will generally be referred to, unless otherwise mentioned.

1. Counsel for the defendant maintain that under the statutes of this state, the city cannot be subjected to a personal judgment in a case of this kind under any circumstances or for any cause whatever. That is

a broad statement, and contrary, we think, to the great weight of authority. If an individual would give money to another in return for a supposedly valid obligation in writing, and the written instrument should turn out to be invalid, no court would hesitate an instant in making recovery possible. Principles of justice and honesty fundamentally apply to individuals, municipalities, states and nation alike, and should be applied alike, unless constitutional or statutory provisions forbid. Municipalities, it is true, are creatures of the legislature and have only such powers as are granted them, and cannot do the things prohibited by law, as we held in the first part of Tobin v. City Council, 45 Wyo. 219, 17 P. (2d) 666. But courts ought not, and will not, according to the weight of authority, go too far in brushing aside principles of justice and honesty, and this fact was recognized by us in the second part of Tobin v. City Council, supra. To give cities to understand that if they can get some one to buy worthless bonds, the purchaser may go and find his money where he can, and that upon them or their officers rests no duty whatever, does not sound like a salutary rule. Of course, if the city and its officials fulfill their duty in connection with special assessments, nothing further can be expected of them; the contract between the parties, or the statute limiting liability, must then govern, and the city is relieved from any liability, even though there may be a deficiency in the amount collectible. 44 C. J. 406; Richardson v. City of Casper, (Wyo.) 45 P. (2d) 1; Sutter v. Town of Wetonka, (S. D.) 253 N. W. 64; Morris v. Sheridan, 86 Or. 224, 167 Pac. 693; City of Irvine v. Wallace, 254 Ky. 564; Gagnon v. Butte, 75 Mont. 279, 243 Pac. 1085, 51 A. L. R. 966; City of Winner v. Kelly, 65 F. (2d) 955; note, 38 A. L. R. 1303. But when there is a failure, neglect or refusal to perform such duty, a different question is presented.

Counsel rely for their position upon the provisions of the act of 1915 (Sec. 2012, Comp. St. 1920; Sec. 22-1604, Rev. St. 1931), that the bonds shall provide that "the principal sum therein named and the interest thereon shall be payable out of the local improvement fund created for the payment of the cost and expense of such improvement, and not otherwise," and upon the provisions of Sec. 2017 of the same statute (Sec. 22-1614, Rev. St. 1931), reading:

"Neither the holder nor owner of any bond issued under the authority of this chapter, shall have any claim therefor against the city, by which the same is issued, except from the special assessment made for the improvement for which such bond was issued, but his remedy in case of non-payment, shall be confined to the enforcement of such assessments."

It may be noted that the latter statute is copied verbatim in the bonds in controversy. It would seem clear that the sections quoted contemplate the existence of assessments from which the bonds may be paid. Surely the legislature did not intend to confine the bondholders "to the enforcement of such assessments," unless the latter existed. And it provided for their existence by mandatory provisions. Moreover, the duty of the city to create them is implied. Freese v. City of Pierre, 37 S. D. 433; New Orleans v. Warner, 175 U. S. 120, 20 Sup. Ct. 44, 48; 44 L. Ed. 96; Barber Asphalt Paving Co. v. Des Moines, 191 Ia. 762, 183 N. W. 456; Reilly v. Albany, 112 N. Y. 30, 19 N. E. 508. And the further duty is implied that the assessments shall be valid. Barber Asphalt Paving Co. v. Harrisburg, 64 Fed. 283; Hitchcock v. Galveston, 96 U. S. 341; Fisher v. St. Louis, 44 Mo. 482; Rogers v. City of Omaha, 76 Nebr. 187, 107 N. W. 214. The assessments so far made herein have been declared void, and the duty of the city and its officials, accordingly, has not been fulfilled. This construction of the foregoing statute, and

the intent of the legislature above mentioned, seem to be borne out by other provisions of the law. Section 1861, Comp. St. 1920, provides that "the cost or any part thereof of making or reconstructing sewers * * * may be paid from the general revenue of the city" or assessments against abutting property may be made. Counsel for the city contend that this section was impliedly repealed by the act of 1915. But that is not well founded. On the contrary, that act itself (e.g., sections 5 and 7) contemplates that the city may pay for the improvement in whole or in part from its general fund. Section 1831, Comp. St. 1920 (Sec. 22-352, Rev. St. 1931) provides that cities of the first class, as is the city of Casper, shall have power to construct sewers, and "unless a special assessment for such work is made in cases where duly authorized by law, the expenses of such work shall be paid out of the proper fund of such city." We realize that before a city can make a contract for local improvements at the expense of the city as a whole, certain other conditions must exist. Section 4 of article 16 of the constitution provides that "no debt in excess of the taxes for the current year shall in any manner be created" by a city unless the people have voted that this may be done. And statutory provisions to carry out the intent of that section have been enacted. Sections 1824, 1826, Comp. St. 1920. So that we may assume for the purposes of this case that a contract of that character would come within the rule of Tobin v. City Council, supra, unless, as provided by Sec. 1824, supra, an appropriation, within constitutional limits, has first been made. May v. Chicago, 222 Ill. 595, 78 N. E. 912; Gathemann v. Chicago, 263 Ill. 292, 104 N. E. 1085; DeKam v. Streator, 316 Ill. 123, 146 N. E. 550; Reichard v. Warren County, 31 Iowa 381; Mister v. Kansas, 18 Mo. App. 217; note 84 A. L. R. 954-962. But we are not dealing with such a contract in the case at bar.

The constitutional prohibition above mentioned (and so doubtless, any statutory provision in conformity therewith) has been uniformly held not to apply in cases of liability of the city arising out of the neglect of the officials to do their duty. Clarke v. New Amsterdam Casualty Co., 180 Cal. 76, 179 Pac. 195, and numerous cases cited on page 200; 44 C. J. 1135. And we need not give greater force to section 1831, supra, than that it shows a general policy that when no special assessments are made, the city shall pay for the local improvement out of its general fund, and that it is not unjust for the city to do so. In any event, the great weight of authority—stating the rule conservatively—is to the effect, that when a municipality has the power to make local improvements and to pay therefor either out of a general fund, as is true here under the sections of the statute above cited, or by assessments against abutting property, and it takes the latter course, but neglects or refuses unreasonably to make or furnish, originally or by re-assessment, valid assessments, by reason of which, and not by reason of negligence of the holder of warrants, certificates, or bonds issued in payment of such improvement or part thereof, are rendered valueless, the municipality must respond in damages, even though it is agreed between the parties, or the statute provides, that the warrants, certificates or bonds shall be paid out of the assessments and not otherwise. 44 C. J. 406-408, 1238; Dist. of Columbia v. Lyon, 161 U. S. 200, 16 Sup. Ct. 450, 40 L. Ed. 672; Barber Asphalt Pav. Co. v. Denver, (CCA) 72 Fed. 336, 340; Bill v. Denver, 29 Fed. 344; Barber Asphalt Pav. Co. v. Harrisburg, (CCA) 64 Fed. 283; 29 L. R. A. 401; Bates Co. v. Wills, (CCA) 239 Fed. 785, 790; Oklahoma City v. Orthwein, (CCA) 258 Fed. 190; City of McLaughlin v. Turgeon, 75 F. (2d) 402; Reilly v. Albany, 112 N. Y. 30, 19 N. E. 508; City of Catlettsburg v. Bank, 234 Ky. 120, 27 S.

W. (2d) 662; City of Covington v. McKenna, 242 Ky.
452, 46 S. W. (2d) 760; Freese v. City of Pierre, 37
S. D. 433, 158 N. W. 1013; Coolsaet v. City of Veblen,
55 S. D. 483, 226 N. W. 726, 67 A. L. R. 1499; Pine
Tree Lumber Co. v. Fargo, 12 N. D. 360, 96 N. W. 357;
Grand Lodge A. O. U. W. v. Bottineau, 58 N. D. 740,
227 N. W. 363; Barber Asphalt Pav. Co. v. Des Moines,
191 Iowa 762, 183 N. W. 456; Heller v. Garden City,
58 Kans. 263, 48 Pac. 841; Commercial Nat. Bank v.
Portland, 24 Or. 188, 33 Pac. 532; Little v. Portland,
26 Or. 235, 37 Pac. 911; Jones v. Portland, 35 Or. 512,
58 Pac. 657; Dale v. Scranton, 231 Pa. 604, 610, 80 Atl.
1110; Oster v. City of Jefferson, 57 Mo. App. 485;
Gable v. Altoona, 200 Pa. 15, 49 Atl. 367; Rogers v.
City of Omaha, 82 Nebr. 118, 122, 117 N. W. 119;
Dillon, Munic. Corp. (5th Ed.) vol. 2, pp. 1251-1252;
McQuillan, Munic. Corp. Vol. 5, pp. 421; see 19 R. C.
L. 1079-1080, and notes 38 A. L. R. 1271; 51 A. L. R.
973. In the case of Rogers v. City of Omaha, the court
said in part:

"That the defendant, through its mayor and council,
had full power and authority to enter into the con-
tracts for the sidewalks cannot be seriously questioned,
but the defendant contends that, inasmuch as the con-
tract itself provides that the work done by the contrac-
tor shall be paid for in warrants drawn against a
special fund to be created by an assessment upon the
lots, and that the contractor agreed to receive such
warrants in full satisfaction and payment for all work
done and all material furnished by him under his con-
tract, and no fund ever having been created, the city
is relieved from all liability. This will not do. The
law is well settled that, when a municipal corporation
enters into a contract of this character, it thereby
agrees to create the special fund, by valid assessments,
and that, failing so to do, it is liable generally. It will
not do to say that a city may contract for the expendi-
tures of large sums of money and material and a large
amount of labor in constructing valuable improve-
ments for the city, and agree to pay for such im-

provements out of a fund to be created by a special assessment, and then escape all liability by never creating the fund, or, if it attempts to create such a fund, by proceeding so irregularly that the assessments when levied cannot be enforced. No such dishonesty would be tolerated in an individual, and we see no reason why it should be in a case of a municipal corporation."

In Barber Asphalt Pav. Co. v. Denver, supra, the court said in part:

"If a municipal corporation which has the power to make a contract for street improvements contracts for them, and stipulates in the contract that the agreed price of the improvements shall be paid to the contractor out of funds to be realized by assessments upon abutting property, and the city has power to make the assessments, but fails to do so, or fails to make valid assessments, and thereby to provide the fund out of which the contractor may receive the price of his labor and materials, the city is primarily and absolutely liable to pay the contract price itself. * * * In cases of this character the city becomes primarily liable, even when the contract expressly provides that the contractor shall accept the assessments in payment of the contract price, and that the city shall not be otherwise liable, whether the assessments are collectible or not. * * * There is no substantial conflict of authority upon these propositions, and the principle they establish is decisive of the question under consideration."

Dillon, supra, page 1256, states in part:

"Local improvements, such as grading or paving streets, making sewers and the like, are public improvements, for the benefit of the city at large, and are not the private improvements of the abutter. The mode of payment by a local assessment on the abutter for benefit is an exercise of the State's power of taxation, and the proceedings as to him are in invitum. The city alone has the power to make the assessment and to collect it, and the duty to exercise the power and to make and collect the assessment is a duty resting upon the city. * * * It is an erroneous view that the city authorities in this matter are the agents of the

contractors * * *. Their failure to do their duty cannot be imputed to the contractor as a fault on his part. The city is, we repeat, under a duty to the contractor—the contractor is under no duty in this respect to the city, but has a right to have the city's duty faithfully performed * * *. It is a universal principle of law and justice that the neglect of a plain duty of this kind is actionable in damages in favor of one who has an interest in the performance of such duty. The practical effect of applying this doctrine to cases like those under consideration is salutary."

In Freese v. City of Pierre, supra, the court said:

"It seems to be the generally accepted rule that, in the absence of express provision to the contrary, a municipal corporation impliedly contracts to cause a valid assessment to be made when it enters into a contract for a street improvement which is to be paid for by special assessment, and that, when an assessment is invalid because of some defect in the proceedings which is chargeable to it, the municipal corporation is holden to the contractor. We are of the opinion that the above rule is a reasonable one and that it is applicable to the case before us."

In Oklahoma City v. Orthwein, supra, the court said:

"The law of Oklahoma, being Session Laws approved April 17, 1908 (Laws 1907-08, c. 10), provided that the city itself should in no case be liable on these improvement bonds; therefore the plaintiff was remediless, unless a valid assessment of benefits should be made and collected. In our opinion, the evidence showed that the city was guilty of negligence and of a willful refusal to make valid assessments to pay the bonds of the plaintiff. The limitation of liability of the city above specified does not, in our opinion, exclude a remedy based upon negligence and willful refusal to perform this duty. Where a municipal or quasi-municipal corporation, which has the power to make a contract for internal improvements contracts for them, and stipulates that the agreed price of the improvements shall be paid to the contractor out of funds to be realized out of special assessments, or out of the

proceeds of bonds it has the power to issue, and the corporation has power to make the assessments or to issue the necessary bonds, but fails to make sufficient valid assessments, or to issue sufficient bonds to provide the necessary funds to pay the contractor the contract price of his material and labor, or if it misappropriates such funds to other purposes, the corporation becomes primarily liable to pay the contract price itself."

These authorities hold the city liable in case of neglect or refusal to collect the assessments. But that should, under our statute, be true only when the bondholder or contractor is not himself able to do so, as is true in the case at bar. Richardson v. City of Casper, supra. Municipalities are held responsible in many other cases for neglect of duty of its officials. In 13 C. J. 443, it is said that "a contract is invalid as against public policy, the tendency of which is to induce a breach or neglect of official duty." And while the legislature has the power to establish public policy, at the same time it should not be lightly assumed that it intended to enact legislation contrary to this general principle, or contrary to what civilization has in general—with some exceptions during the last decade—recognized as common morality.

Most of the cases cited involved a contractual limitation of liability, but the rule has been held applicable as well when the limitation is prescribed by statute. Oklahoma City v. Orthwein, supra. City of Irvine v. Wallace, supra, indirectly holds that the rule is applicable in either case, and that with good reason, for neglect or refusal of the city to do its duty would cause no less loss in one case than in the other, and would be as reprehensible in the one instance as in the other. The statute in this case, limiting the liability of the city, contemplates the existence of valid assessments no less than would a contract to the same effect. The condition in the one case is the condition contemplated

in the other. If a contract for the limitation of liability cannot be held to contemplate the non-existence of valid assessments, since that would be dishonest, neither can the statute. So, too, while most of the cases cited deal with the rights of contractors, the rule is not limited to them. Bonds may be issued direct to the contractor, or they may be sold. Sec. 2011, Comp. St. 1920. If sold, the purchaser thereof stands in the shoes of the contractor for whose benefit the bonds were issued, and has the same rights which he would have. State v. City of Tacoma, 97 Wash. 190, 166 Pac. 66. Neither is it of importance whether we look at the action herein as one in tort or one on a contract. City of Henderson v. Redman, 185 Ky. 146, 214 S. W. 809, 7 A. L. R. 346. And see note in 7 A. L. R. 354. The facts are pleaded. On the one hand the neglect of the city to perform its duty in furnishing the plaintiff with valid bonds may be considered as a tort. On the other hand, the city impliedly agreed, when it sold its bonds to the plaintiff, that it would furnish him with valid ones, but it failed to do so. The money received was not an ordinary loan. It was received in return for valid bonds. And the city had full power to receive the money for that purpose, and the restrictions contained in section 1824, Comp. St. 1920, as to the power of the city to borrow money, has no application.

Counsel for the city cite a number of cases, which, they claim, hold contrary to the cases cited by us. We shall not review them all. Many of them are more or less readily distinguishable. That is true with the cases from Illinois. It appears, for example, in Farrell v. City of Chicago, 198 Ill. 558, 65 N. E. 103, that the agreement between the parties was that the contractor should "make no claim against said city in any event, except from collection of the special assessment made or to be made for the improvement, and to take all risk of the invalidity of any such special assessments;

said party of the second part (the city) not to be liable in any event by reason of the invalidity of any such special assessments, or the proceedings herein, or for failure to collect the same." The other Illinois cases cited were decided under a similar contract. That was true also in Walker v. Toledo, 18 O. S. 452; Keating v. Kansas, 84 Mo. 415; Wheeler v. Poplar Bluff, 149 Mo. 36, 49 S. W. 1088; Dalton v. Poplar Bluff, 173 Mo. 39, 72 S. W. 1068. The clause limiting liability mentioned in Cotter v. Kansas City, 251 Mo. 224, 158 S. W. 52, was held, and seemingly properly so, to have a like effect. Sections 2012 and 2017 of Comp. St. 1920 are not nearly as drastic as the clause quoted from the Illinois case. Dillon, supra, page 1258, holds that even if a contractor or bondholder agrees to take all risks in connection with the validity of the assessments, still the city ought not to be exempt from liability "for negligent failure to discharge its duty to take the proper steps to levy the assessments." That statement is in accord with what we have said on the point of public policy.

The case of Gagnon v. Butte, 75 Mont. 279, 243 Pac. 1085, 51 A. L. R. 966, stripped of all surplusage, is much like the case of Richardson v. City of Casper, supra. Montana has, since the date of that decision, recognizing the injustice of letting a bondholder take an unjustifiable loss, made provision to prevent that in the future. Stanley v. Jeffries, 86 Mont. 114, 284 Pac. 134. Moore v. City of Nampa, 18 F. (2d) 860, affirmed 276 U. S. 536, 48 S. Ct. 340, 72 L. Ed. 688, is said not to be in point in both Powell v. City of Ada, 61 F. (2d) 283, 286, note 1, and City of McLaughlin v. Turgeon, 75 F. (2d) 402. In Carruthers v. Astoria, 72 Or. 505, 143 Pac. 899, and Affel v. Detroit, 112 Mich. 560, 71 N. W. 151, it appears that the municipality was in no event authorized to make the local improvement at its own cost. That appears to have

been true also under the laws of Wisconsin (Hall v. City of Chippewa Falls, 47 Wisc. 267, 2 N. W. 279), as well as of Oklahoma. Severns Pav. Co. v. Oklahoma City, 158 Okla. 182, 13 P. (2d) 94. The Supreme Court of that state in the case of First Nat. Bank v. Board (Okla.), 49 P. (2d) 1077, though holding that in the face of other remedies, the bondholder could not recover a personal judgment against the city, stated that "it is self-evident that, if justice and good morals are to prevail, means must be provided for the payment of special improvements made in good faith and for the reimbursement of persons who by the purchase of the bonds issued according to law, have made the creation of such improvements possible." Some of the cases cited relate to the invalidity of the contract to make the improvement. We do not have the point before us and express no opinion thereof. The petition alleges that the law was followed. There are some cases, however, which present a real conflict; Wilson v. Aberdeen, 19 Wash. 89, 52 Pac. 524; Rhode Island M. & T. Co. v. Spokane, 19 Wash. 616, 53 Pac. 1104; German Sav. Bank v. Spokane, 17 Wash. 315, 49 Pac. 542; Windfall v. Bank, 172 Ind. 679, 87 N. E. 985; 172 Ind. 691, 89 N. E. 311; perhaps Town of Capitol Heights v. Steiner, 211 Ala. 640, 101 So. 451, 38 A. L. R. 1265; (contra, Nolan v. Reading, 235 Pac. 367, 84 Atl. 390), and probably Broad v. City of Moscow, 15 Idaho 606, 99 Pac. 101, and other cases from the same states. The Washington court, at first holding with the majority, changed its opinion in later cases. See note 32 L. R. A. N. S. page 175. In German Sav. Bank v. Spokane, supra, the court analyzes the reasons pro and con for holding or not holding the municipality liable in such cases, and concludes that "after all that can be said and done * * * as a matter of right and law, where one of the parties must suffer, the loss should fall upon the one who has the best opportunity to

protect himself and is the most at fault." It concludes by holding that the contractor or bondholder is the most at fault. The reverse is held to be true by Dillon, supra, 1255, in a note commenting on that case, and we think rightly so. In cases cited from Indiana, Alabama and Idaho, the courts hold that the city authorities are the agents of the contractor or bondholder in connection with the levy and collection of assessments. We think, however, that this view is erroneous, and we agree in that respect with Dillon, supra, page 1257. Nor can we agree with counsel that the city received no benefit from the improvement, and that payment by the city, therefore, would be a voluntary payment. A local improvement is necessarily public. If it were not, no special assessment against abutting property could be made. 44 C. J. 500. The latter can be made only pursuant to the power of taxation. Dillon, supra, p. 1256. In many cases, in fact, while the abutting property owner is benefitted to some extent, the greatest benefit from a local improvement is in favor of the public at large.

2.   The original assessments have been declared by a competent court to be void. We cannot now conceive upon what theory that was done, especially in view of Sec. 2019, Comp. Stat. 1920, which seems to declare all assessments made in good faith to be valid. But we must, for the purposes of this case, take it for granted that the decision was correct. However, the city was not a party to it, and we take it, therefore, that it is not bound by the judgment in that suit. It might, therefore, be able, under the provisions of Sec. 22-1534, Rev. St. 1931, to enforce the assessments by a proceeding in court, or might be able to make reassessment. Sec. 22-1542, Rev. St. 1931. The right to make such reassessment, so far as time limit is concerned, has not been lost. Sec. 22-1545, Rev. St. 1931, gives ten years after the assessments have been held

invalid, and that was in 1932. Counsel for the plaintiff, however, asserts that no reassessments can be made. Counsel for the city do not controvert this contention. Notwithstanding that, we cannot acquiesce in the reasons given by counsel for the plaintiff. They are based on false premises. The contention as to the bonds issued under Ch. 121, C. S. 1910, is based on the claim that the sections of that law relating to reassessments (Sections 1893, 1894, Comp. St. 1920) were repealed by Chapter 73 of the Session Laws of 1931. There are two answers: first, sections 2007 and 2008, Comp. St. 1920 (Sections 41 and 42 of the act of 1915), still in force, apply to all cities and towns and to all special assessments, and sections 1893, 1894, Comp. Stat. 1920, were, at the time when the bonds herein were issued, merely cumulative; secondly, Sec. 180, Ch. 73, Session Laws of 1931, preserves all rights which the city and the plaintiff had under the law then existing.

It is further contended that the bonds which recite that they were issued under the 1915 law, do not carry with them the right to have reassessments made. The petition alleges that they were issued under the 1915 law, except that the apportionment of the assessments were made according to area, as provided by Sec. 22-146, Rev. St. 1931 (Sec. 1, Ch. 56, Laws of 1917), whereas the act of 1915 (Sec. 1984, Comp. St. 1920) provides for assessments according to area and distance. There is nothing in the law of 1917 which prohibits a city from proceeding in the preliminary proceedings according to the act of 1915, and apportion the assessments according to the 1917 law. The latter applies to every city and town, and provides that the assessments for sewer may be made as therein provided. It may, as it were, be regarded as a supplement to the act of 1915. Whether it supersedes the method of apportionment of assessments provided in the latter act so far as sewers are concerned need not be deter-

mined. It in any event supplements the act of 1915 and permits the method of apportionment of assessments as to sewers in the manner in which it was done in the case at bar. And though the act of 1917 itself provides for no reassessment, there is no reason why the broad language of the sections of the law of 1915 as to reassessments should not be held applicable to sewer assessments. But counsel seem to think that notwithstanding that broad language, the act of 1915 itself shows that the provisions therein do not apply to sanitary sewers. He bases that contention on the provision of part of Section 3 thereof, which states that the "term 'drains' and 'drainage' shall be deemed to include surface sewers, drains, gutters and all kinds of drainage other than sanitary sewers." This provision is wholly foreign to the act and is an anomaly therein. Drains and drainage are never again referred to therein, and the provision has no connection with the matter under discussion. Counsel construe it as meaning that the term "local improvement" or "improvement" shall not include sanitary sewers. But there is not a syllable of that in the act. On the contrary, the act (sections 1 and 3) specifically provides that the term "improvement," used constantly in the act, shall be deemed to mean every improvement of any kind except sidewalks. If, then, a reassessment can be made, or the city is able to enforce the original assessments in another manner, what would be the situation here? Plaintiff contends that he is not required to wait until a reassessment is made. There are authorities which sustain that contention. In City of Covington v. McKenna, 242 Ky. 452, 46 S. W. (2d) 760, it is held that a contractor (or bondholder) has the alternative right either to recover a general judgment against the city, or to bring mandamus or other proceeding to compel it to make a reassessment. That, perhaps, is also the implied holding of other cases already cited.

See note 32 L. R. A. N. S. 175-176. On the other hand, it is held that "if the city has power to levy a reassessment, it must be given the opportunity to reassess * * * and it is not liable until its neglect or refusal to levy reassessments is shown." Page & Jones, Taxation by Assessment, Sec. 1513; Hamilton, supra, Sec. 462; 44 C. J. 407; Citizens Bank of Des Moines v. City of Spencer, 126 Ia. 101, 101 N. W. 643; Stephens v. City of Spokane, 14 Wash. 298, 44 Pac. 541, 45 Pac. 31; Foster v. City of Alton, 173 Ill. 587, 51 N. E. 76; Dillon, supra, p. 1254-1255; Powell v. City of Ada, (CCA) 61 F. (2d) 283, 286. We think that this is the better rule, for there can be no doubt that the legislature intended that the primary liability should, in the first instance, rest upon the property against which the assessments may be made. The law relating to reassessments is as much a part of the bonds issued herein as the law relating to the original assessments. In fact, the bonds themselves contemplate that a situation might arise under which a reassessment might be necessary, so that it seems to be clear that, in a case like that at bar, if a valid reassessment can be made, the city should be given the opportunity to make it, and that the municipality should not be held guilty of neglect or refusal to do its duty, until such opportunity has been given. The same principle should apply as to enforcement by the city of the original assessments. The further question arises whether the city should, upon receiving knowledge of the invalidity of the assessments, proceed upon its own initiative in taking corrective steps, in order that the opportunity mentioned may remain open to it, or whether some duty in reference thereto rests upon the holder of the bonds. In Rogers v. Omaha, supra, the city merely failed to take the proper steps, and was held liable generally. In Oklahoma City v. Orthwein, supra, a request was made of the city to make a reassessment, and failing

to do so, it was held liable generally. In First Cath. Slovak Union v. Scranton, 301 Pa. St. 500, it was held that mere delay on the part of the city in collecting assessments, not resulting in any damages, will not sustain an action for general judgment against the municipality, unless the latter is requested to proceed with the collection and then fails to do so. In Powell v. City of Ada, 61 F. (2d) 283, in which an action like that at bar was brought, the city proceeded, after the institution of the action, to make a reassessment. It was held that in view of that fact, the city could not at that time recover a general judgment against the city. The court added that where the right to reassess exists and is not lost, a bondholder should bring an action in mandamus. A number of other cases declaring the same principle are cited. An action in equity has been held proper by other authorities. 44 C. J. 1239; German Am. Sav. Bank v. Spokane, 17 Wash. 315, 49 Pac. 542, 38 L. R. A. 259. Judge Dillon, in his work on Mun. Corp., supra, page 1253, cites the conflicting views, and he expresses (p. 1254) his personal view as follows:

"So long as it is within the power of the city to make an assessment to pay the contractor, the contractor may by mandamus compel the assessment, whether the failure to make the assessment arises from neglect or refusal of the city to proceed, or the invalidity of an assessment which has been made, if the same may be rectified by a new assessment; but mandamus may not be the only remedy of the contractor against the city if it has plainly violated its duty towards the contractor by unreasonably and persistently neglecting or refusing to make and collect the assessment or to make a new assessment if it has power to do so, and the power and duty in these respects being in and upon the city."

The same author states on page 1257:

"What right has the city to fold its hands and say

to the contractor: We are not liable in damages for neglect of duty; your only remedy is yourself to apply for a mandamus on the city to do its duty in making or collecting the assessment? What right has the city to cast this expense and burden on the contractor? The city needs no mandamus if it wants to discharge its duty. The writ will not lie unless the city is in fault."

We are inclined to think that the author, taking into consideration both citations, expresses a reasonable view. We do not think that a bondholder should be permitted to sit idly by, without any effort to enforce, or bring into existence, the lien which he has or which the statute contemplates he should have, so that he may thereafter have recourse to a better security—the general funds of the city. On the other hand, he should not be compelled to bear all the burden in connection with the assessments, particularly where, as in the case at bar, they have been declared invalid in suits brought by him, and the city should not be permitted to unreasonably and persistently refuse to do its duty. The facts should govern as to whether or not in a particular case the plaintiff should recover a general judgment against the city. The reason given for holding that the bondholder should resort to mandamus, if reassessments can be made, is that city officials should not be able by mere negligence to create a general obligation against a city. That there is some force in this reasoning cannot be denied, and hence the bondholder should not be without some duty as already mentioned, let alone profit, perchance, by collusion with officials. On the other hand a doctrine that the city officials need not perform their duty toward bondholders until they are compelled to do so by order of the court is unwholesome. To hold that a bondholder should first attempt to enforce assessments actually made, carry on litigation for a number of years, as in this case, but to find that the assessments are invalid;

that he must, thereupon, in the absence of voluntary action on the part of the city, necessarily resort to mandamus in order to force the officials to do their duty, with the latter, perchance, dragging out litigation and the reluctant performance of their duty for a further number of years, is to hold to a doctrine so totally unjust to the bondholder, and so ruinous to the credit of the city, that a court, especially in a state like Wyoming, without crowded cities, cannot but hesitate to give its approval thereto without express legislative sanction; and it is far better, we think, to rely on the watchfulness of the general tax payers, who are largely responsible for the election of their officials, to see that the latter perform their duty required of them under the law. In this case plaintiff brought actions against the abutting property owners to enforce the assessments, but he lost. He called upon the city to come into the suit to uphold the assessments, for the validity of which the defendant city is responsible to him. It wrongly refused to do so. Under these circumstances plaintiff cannot be held to have been negligent. On the contrary, the position taken by the city, apparently adhered to for a number of years, and persistently taken in this court, might well be considered as a willful refusal on its part to do its duty, making it liable generally, were it not for the fact that counsel for the plaintiff maintains, and has presumably always taken the position, that no reassessments can be made, and that even if they could be made, the plaintiff is not compelled to wait on them. Under these circumstances, we do not think that the opportunity to make valid reassessments, if such can be made, or to enforce the original assessments, if that can be done, should be held to have been lost.

There remains to be considered what order we should enter herein. The petition alleges that the assessments are and have been declared to be totally void,

in suits which the city was called upon to defend. While the point is somewhat doubtful, we are inclined to believe, particularly in view of the position taken herein by counsel for the city, that, under these circumstances, the demurrer should have been overruled, and the city should have answered, setting forth the facts which should, as herein explained, relieve it from general liability, permanently or at least at this time, and for that reason the judgment should be reversed. We think that we should also, in order to expedite the controversy herein, enter an order similar to that in City of Prestonburg v. Bank, 255 Ky. 252, a case like that at bar, and direct the trial court to ascertain and fix the amount of the unpaid bonds of the plaintiff, and, unless it is plain that the city cannot make a valid reassessment, or cannot enforce the original assessments, direct and require the city to proceed promptly to make valid reassessments or take such steps as under the law it is permitted to take, to enforce the original assessments, and to make such further order herein as may be proper, not inconsistent with this opinion.

*Reversed and remanded.*

RINER, J., concurs.

KIMBALL, Ch. J., concurs in the result.

KIMBALL, Ch. J. (concurring in the result).

The plaintiff's petition states several causes of action, on different theories, for a money judgment against the city. Plaintiff contends that the original assessments are invalid, and that the city has no power to make re-assessments. Our decision assumes that the city, in spite of the judgments in the previous actions by the bondholders against the property owners, may still have the power to collect the original assessments. If the original assessments are invalid, we see no rea-

son for holding that re-assessments should not be made. Our order in effect converts the action for damages into an action for mandamus to require the city either to collect the original assessments or to make re-assessments. This seems to me likely to accomplish the right result, and I am willing to put aside possible objections on the ground that the petition is insufficient as a petition for mandamus.

While I concur in the result, I feel that I should state my reasons for a doubt on one question that has not been fully presented in argument and in my opinion ought, at least, to be left for decision in some future action.

In view of our disposition of the case, it seems unnecessary to decide whether a holder of special assessment bonds has a right to a general judgment against a city while it is still within the power of the city officers to make a valid assessment against the improved property. The majority of the court express the opinion that the bondholder, though he has a remedy by mandamus to require the making of valid assessments enforceable against the improved property, may in some cases be entitled to a personal judgment that will become a part of the public indebtedness to be paid from general taxes. I fear that this view enlarges the obligation of the contract in defiance of positive law.

Both the bond and the statute (§§ 22-1614, 22-1604, R. S. 1931) declare that: "Neither the holder nor owner shall have any claim therefor against the city by which the same is issued, except from the special assessment made for the improvement for which such bond was issued, but his remedy in case of non-payment shall be confined to the enforcement of such assessments," and that it "is payable only out of the local improvement fund created for the payment of

the cost and expense of such improvement, and not otherwise."

Section 22-1542 by mandatory language provides for re-assessment when the original assessments have failed to be valid "for want of form or insufficiency, informality, or irregularity or non-conformance with the provisions of law, charter or ordinance," and the substance of this provision is contained in the bond. Section 22-1543, in speaking further of re-assessments, declares that "the omission, failure or neglect of any officer or officers to comply with the provisions of law, the charter or ordinances governing such city or town, as to petition, notice * * *, or any other matter whatsoever connected with the improvement and the first assessment thereof," shall not "operate to invalidate or in any way affect" the making of re-assessments authorized by section 22-1542, "* * * it being the true intent and meaning of this chapter to make the cost and expense of local improvements payable by the property specially benefited thereby, notwithstanding the proceedings of the council * * * officer or authority of such city or town may be found irregular or defective, whether jurisdictional or otherwise; * * *." Section 22-1552 declares that "it shall be the duty of the council, and it shall have the power by any subsequent proceedings, to correct any errors or irregularities in any of the proceedings mentioned in this act." The city may collect the assessments, but is not required to do so. Richardson v. City of Casper, 48 Wyo. 219, 45 P. (2d) 1.

I agree that these statutes limiting the liability of the city contemplate the making of valid assessments against the property benefited by the improvement. It was the duty of the city to make assessments that could be enforced by it or by the bondholder. If the original assessments are invalid, it is the duty of the

city to make valid re-assessments. If the original assessments are invalid, and the power to make re-assessments has been lost, by reason of the city's wrongful or negligent act or omission, the bondholder should be entitled to a personal judgment against the city. On this point I agree with the other members of the court.

All the cases hold that when the claim of the bondholder to relief is not founded on the impossibility of levying an assessment, but upon the refusal or neglect of the city officers to perform their duty in that respect, mandamus is an appropriate remedy to compel an assessment or. the correction of an invalid assessment. On the question whether, while this remedy by mandamus is available, the bondholder may nevertheless sue for a personal judgment against the city, the cases are in conflict. See Dillon on Municipal Corp. (5th ed.) pp. 1253-1254. The opinion of my associates on this point relies strongly on the views expressed in the fifth edition of Dillon on Municipal Corporations, pp. 1256-1257, where the question seems to be discussed as one of public policy.

Questions of public policy should be decided by the legislature (see Richardson v. City of Casper, *supra,* at p. 231), and the court should interfere only for the purpose of enforcing constitutional limitations of the legislative power. The statutes applicable in the case at bar contain provisions intended to prevent the general taxpayer from being compelled to pay for public improvements that ought to be paid from assessments against the property specially benefited. There is no doubt that this is a worthy purpose. If we establish a rule that will permit a judgment for damages against the city, before the remedies against the improved property have been exhausted, we seem to give the bondholder a greater right than he has by his contract or by the terms of the statutes. Cases wherein the point has been given most careful consideration sup-

port the view that the bondholder has no right to a personal judgment against the city so long as the remedy by mandamus is available. See Powell v. City of Ada, 61 F. (2d) 283; Severns v. Oklahoma City, 158 Okl. 182, 13 P. (2d) 94; Likes v. City of Rolla, 190 Mo. App. 140, 176 S. W. 520.

There may be ground for the contention that a procedural rule that authorizes a personal judgment against the city while it has the power to make valid assessments, will permit an evasion of constitutional limitations of public indebtedness. The majority opinion calls attention to those statutory provisions that permit the city to pay for improvements from general taxes, and also to the fact that that power is limited by the constitutional provision (sec. 4, art. 16), that "no debt in excess of the taxes for the current year shall, in any manner, be created by any * * * city * * *, unless the proposition to create such debt shall have been submitted to a vote of the people thereof and by them approved." It is probable that the amounts here in question are in excess of the taxes for the current year. Though the mentioned constitutional provision does not apply to debts to be paid from special assessments, nor to a liability arising from the fact that the city by its act or neglect has lost the power to make valid assessments, there may be considerable doubt whether, without a vote of the people, a general public indebtedness in excess of the current revenues can be created for the purpose of paying special assessments while there is still available a remedy by mandamus to require the doing of the acts necessary to fasten the indebtedness on the property where it belongs.

If the question is one of public policy, and the court is to assume the right to declare that the public interests require that the bondholder may sue for a personal judgment against the city when the city officers "wil-

fully" or "unreasonably and persistently" fail to make valid assessments, I think we should give more consideration than seems to have been given to the following matters. The owners of the improved property will be interested in defeating the assessments, but this interest will be less active if they know that valid re-assessments will be required. The bondholders, who may not be able to collect in full even on valid assessments (see Richardson v. City of Casper, *supra*), will also be interested in having the assessments omitted or declared invalid, if they thereby acquire a right to a personal judgment against the city. The city officers may be indifferent until they are sued. The general taxpayers will probably have no reason for thinking they are in jeopardy until they have notice of a suit for a personal judgment against the city, and even then it would seem that they should have the right to rely on the law designed for their protection, and to suppose that the court will not enter a judgment that will affect them unless it is clear that valid assessments cannot be made.

### On Petition for Rehearing

Blume, Justice.

A petition for rehearing was filed herein. The arguments advanced therefor are substantially those advanced on the original hearing, and all the matters urged have heretofore been carefully considered, and no reason exists why a rehearing should be granted. It appears, however, that the city believes that it has grounds of defense, and which, it claims, can be set up in the further proceedings of the case. This court did not intend to preclude the city from answering over and setting up such defenses as it may have, and special directions, mentioned in the original opinion herein, were made under the belief that the further proceedings in the case could be expedited thereby.

While these special directions would not prevent the city from setting up whatever defenses it has, they may as well be eliminated, and the case is, accordingly, remanded to the district court with the simple direction to overrule the demurrer, and for further proceedings not inconsistent with the opinion. Rehearing is denied.

*Rehearing denied.*

KIMBALL, Ch. J., and RINER, J., concur.